225 F.2d 343
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS OF AMERICA, OVER-THE-ROAD
AND CITY TRANSFER DRIVERS, HELPERS,
DOCKMEN& WAREHOUSEMEN, LOCAL
NO. 41, AFL, Respondent.
 No. 15175.
 United States Court of Appeals Eighth Circuit.
 Aug. 26, 1955.
 
 Frederick U. Reel, National Labor Relations Board, Washington, D.C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Robert H. Hurt, Washington, D.C., with him on the brief), for petitioner.
 John J. Manning, Kansas City, Mo., for respondent.
 Albert J. Goldberg, Washington, D.C., filed brief for Central States Drivers Council as amicus curiae.
 Before SANBORN, JOHNSEN, and VOGEL, Circuit Judges.
 JOHNSEN, Circuit Judge.
 
 
 1
 The National Labor Relations Board seeks to have enforced against a labor union, the provisions of an order, 107 N.L.R.B. No. 158, issued by it against the union and an employer. Enforcement is not sought against the employer, because the latter had sufficiently satisfied the Board of its willingness to comply with the order. Cf. N.L.R.B. v. International Union, etc., 8 Cir., 216 F.2d 161.
 
 
 2
 The Board had found the labor union guilty of violating section 8(b)(2) and 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., (1) in having caused the employer to discriminate against five of its employees, in violation of section 8(a)(3) of the Act, by assigning them work on the basis of seniority determined by the date of their membership in the union instead of by the date of their employment, and (2) in having maintained, renewed and enforced a contract with the employer, giving the union the right to settle all controversies over employees' seniority, and so improperly causing, in the Board's judgment, the employees to be induced to join the union.
 
 
 3
 The contract between the union and the employer contained a general provision that 'Seniority rights for employees shall prevail', and a requirement that a list of the employees, arranged in the order of their seniority, should be kept posted on the employer's premises. There was, however, a special clause in the agreement, under which, as noted above, the union was to have the authority to settle all controversies or questions of seniority. The union accordingly prepared the seniority lists for posting by the employer and made the seniority of each employee turn upon the date that he had become a member of the union. The five employees here involved, who had not immediately joined the union when their employment began, were thus given seniority ranks below those of others who had been employed later but had promptly taken out union membership. The rankings so set out in the posted list did not, however, cause the five employees to be pecuniarily affected, until some time later, when the subsequent employees referred to were allowed to claim work priorities over them as a matter of seniority rights.
 
 
 4
 The order of the Board directed the union to cease and desist (1) from performing or giving effect to the provisions of its contract with the employer, or with any other member of a motor-carrier employer group, with each of which carriers contracts had at the same time been made, which purported to delegate authority to the union to settle controversies relating to seniority among the employees, and (2) from entering into or renewing any agreement with any employer containing provisions delegating to it authority to determine the seniority of employees or to settle controversies relating to seniority, and enforcing such provisions. The order further required the union to make whole the five employees for such pay-losses as they had sustained as a result of the work priorities given to other employees who had been employed after them but had taken out union membership sooner than they.
 
 
 5
 The findings of the Board as to the seniority discriminations engaged in against the five employees, and as to the part played by the union therein, are all properly supported by the evidence in the record. And the only attack made by the union upon this phase of the Board's decision and order is a contention that the Board was not entitled to issue a complaint, engage in a hearing, make findings, and grant relief in relation to this alleged violation, in view of the limitation proviso of section 10(b) of the Act, 29 U.S.C.A. § 160(b), that 'no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *.'
 
 
 6
 The substance of the union's argument upon the question is that all of the five employees had begun their employment more than six months prior to the filing of any charge with the Board; that they were informed at the time their employment began, or at least during the course of the same day, as to the basis on which their seniority status would be determined and established; and that whatever wrong may have been done them in thus fixing their seniority status was therefore one which had occurred on the date their employment began and so had happened 'more than six months prior to the filing of the charge with the Board.'But the factual situation, when all its elements are perspectively considered, was not one in which the question of discrimination was required to be given such a glib and narrow appraisal. On the circumstances involved, the seniority list was an illegal one under the Act and so was properly subject to being refused application by the employer in any affecting work-situation that might arise. Hence, any actual application made of it, in such a way as to cause specific injury to an employee in his work, when the list was not lawfully subject to being put to such a use, was soundly entitled, we think, to be regarded as something more than a wrong which had attained its legal completeness or proximate finality by the preparation of the seniority list. We agree with the position of the Board in its brief that, when the union and the employer failed to take steps to correct their unlawful action, but chose instead to make subsequent specific use or application of the improper seniority list to subject the five employees to a direct personal loss in work opportunity, they engaged in an additional step of legal wrong, having a produced consequence and a union-joining compulsion extending beyond the mere passive existence of the improper seniority list, and that they thereby were guilty of committing such a discrimination as remedially entitled a charge to be filed with the Board within a six-months period after the work deprivation had occurred.
 
 
 7
 There is, however, also another reason why the union's contention on limitation must here fail. In availing itself of its statutory right to have the Board review the trial examiner's determinations and recommendations, the union filed no exception claiming that the finding of discrimination arrived at by the examiner in respect to the economic use made of the seniority list to subject the five employees to a personal loss in work opportunity was one whose factual nature and results were barred by limitation. Thus, the contention now being made, that all of the circumstances involved should be appraised simply as a single wrong done and completed at the time the seniority list was prepared, was not one which the union saw fit to call upon the Board itself to consider and adopt, in the Board's scrutiny of the trial examiner's actions, nor did the Board in its decision and order treat the matter as one where any limitation question was presented or could otherwise be said to exist.
 
 
 8
 A court is not required to entertain a ground of resistance to the enforcement of an order of the Board, going to the appropriateness of some determination made by the trial examiner and adopted by the Board, not nakedly void under the statute, where the ground has not properly been urged and maintained before the Board on exception to the trial examiner's report, 'unless (as the statute provides) the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.' See 29 U.S.C.A. § 160(e); Marshall Field & Co. v. N.L.R.B., 318 U.S. 253, 255-256; 63 S.Ct. 585, 87 L.Ed. 44; N.L.R.B. v. Cheney California Lumber Co., 327 U.S. 385, 388-389, 66 S.Ct. 553, 90 L.Ed. 739.
 
 
 9
 The only other contention made by the union here is-- and this is its principal challenge to the Board's order-- that the Board improperly reached out to declare the provision of the contract between the union and the employer, as well as those between the union and other employers generally, delegating to the union the authority to settle all controversies as to seniority, to be itself violative of the Act and so void. It is argued in substance that this holding and the portion of the Board's order predicated thereon were legally improper in the situation, because the validity of the contract provision was not attacked in the complaint, but only the manner in which it had been used and applied by the union and the employer; the legality of the provision was not in fact litigated in the proceeding as a matter of incident arising in the hearing or otherwise; the parties were not in any way given notice or afforded opportunity to be heard upon the question; the holding of the Board was therefore one which had denied the union due process of law, in violation of the Fifth Amendment, in respect to the contract provision; and the failure of the Board to give notice and afford opportunity for hearing on the question was even more grievous and unfair in the situation, because the Board had by previous decision approved this exact contract provision in another case as not being invalid under the Act, and so had itself fostered the making of such a contract provision between unions and employers.
 
 
 10
 In Firestone Tire and Rubber Company, 93 N.L.R.B. 981, the Board had declared that such a contract provision, in identical language with that here, delegating to a union the authority to settle any controversy over the seniority standing of any employee upon the seniority list, was not violative of the Act, since 'the seniority provision, although permitting the Union to control the seniority to some extent, (did) not on its face provide that the Union should do so because of union affiliation.'
 
 
 11
 The Board chose, however, in the present case to depart from and overrule what it thus had held in the Firestone case, saying:
 
 
 12
 'The objective standards relevant to a determination of seniority generally derive from the employment history of the employees involved, and that information is, as a rule, peculiarly within the knowledge of the employer. Indeed, the area in which the union is likely to be more informed than the employer with respect to the employer's employees is that pertaining to employees' union membership or to the employees' compliance with the union's constitution, bylaws, or other regulations-- subjects * * * which obviously are not relevant considerations in the implementation of a seniority provision. We can therefore see no basis for presuming that when an employer delegates to a union the authority to determine the seniority of its employees, or even to settle controversies with respect to seniority, such control will be exercised by the union in a nondiscriminatory manner. Rather, it is to be presumed, we believe, that such delegation is intended to, and in fact will, be used by the union to encourage membership in the Union. Accordingly, the inclusion of a bare provision, like that in the (initial) contract (here), that delegates complete control over seniority to a union is violative of the Act because it tends to encourage membership in the Union. And because we believe that it will similarly tend to encourage membership in the union, we also conclude that the inclusion of a statement, like that in the (renewal) contract (here), that seniority will be determined without regard to union membership, is not by itself enough to cure the vice of giving to the Union complete control over the settlement of a 'controversy' with respect to seniority.' (Emphasis ours.) The Board further went on to declare that 'insofar as the Firestone case holds to the contrary, it is hereby overruled.'
 
 
 13
 We do not have any reason to doubt the general salutariness and soundness of this changed view of the Board on such a contract provision, in relation to the purposes of the Act and the protection of employees' freedom of choice thereunder, or any basis otherwise to regard the Board's judgment in the matter as being wrong. Nor do we think that any question can exist as to the Board's right to engage in such general comment upon any evil under the Act which it sees confronting or lurking in a situation before it. We regard the Board as being entitled, without any charge of officiousness being capable of being hurled against it, to point out and denounce in general, for such practical good and putting-on-notice as this may serve to accomplish, any unfair labor practice, which it may observe in a situation, even though the practice may not processively have been made the subject of charge, hearing and submission in the immediate proceeding.
 
 
 14
 Beyond this, it may be added that the Board's pronouncement as to the invalidity of the contract provision was not wholly an extraneous gratuity in the present proceeding, since contrary to the union's assertion, the complaint, beyond setting out the seniority provision of the initial and renewal contracts, contained a specific allegation that the employer, 'by giving effect to and enforcing' the provision, and the union, by causing the employer to do so, had violated the Act-- although it is true, as admitted by the Board in its decision, that the General Counsel (as constituted under the Act) had not otherwise contended in the proceeding that the contract provision was per se violative of the Act, nor had the trial examiner assumed to throw open or to delve into the question in any way on the hearing or in his intermediate report, apparently because of the Board's holding in the Firestone case, supra.
 
 
 15
 In any event, as we have said, we are of the opinion that the Board could properly make any general pronouncement, which it saw fit, in the way of declaration related to the Act, upon the invalidity of the contract provision involved, and could notifyingly indicate its abandonment of the contrary view taken by it in the Firestone case. But we do not believe that the spirit of the Act, either administrative or general, entitles the Board, on engaging in such an aboutface from its previous position and ruling, no matter in what manner or circumstances this is done, to brand a party as being guilty of an unfair labor practice in having made such a contract provision, while the Board's express holding that the provision is a proper one under the Act has remained unrenounced.
 
 
 16
 When the practical purposes of the Act and the commanding control of the Board in their effectuation are considered, it does not seem to us to make either legal or common sense to say that the Board's rulings are wholly without any sanctity under the Act as a guide for employer or union conduct, but that the Act intends that anyone who relies upon and uses the Board's rulings as a basis for his actions shall be left subject to entrapment and branding as the perpetrator of an unfair labor practice in what he has thus done, if the Board thereafter chances, by reason of change in personnel or otherwise, to depart from one of its previous positions and rulings.
 
 
 17
 Of course, any attempt made by a party to enforce a previous contract provision like that involved, after such a declaration or pronouncement of invalidity has been engaged in by the Board, if the Board's changed position or ruling is one of soundness under the Act, necessarily can afford the basis for a charge of unfair labor practice. And any other assertion by a party of the validity of such a contract provision, after a declaration or pronouncement of invalidity, legally sound, has been made by the Board, which is manifestive of a non-acceptance of the Board's changed position and is intended to influence or has an effect upon employee relations in respect to the provision and its existence, doubtless is entitled to be made the subject of a cease and desist order against the party in an appropriate proceeding.
 
 
 18
 Until, however, there has been an attempt by a party to enforce the contract provision, after such a declaration or pronouncement of invalidity has been made by the Board, or until there has been some other indication, as referred to above, of a refusal to respect and heed the Board's changed position and ruling, intended to have or capable of having effect in employee relations, we do not believe that the Board has the right to blanket an employer or a union with a cease and desist order predicated on the fact of the contract provision having been made, when the Board has up to that time held that such a provision is not violative of the Act.
 
 
 19
 In the situation and on the record before us, we accordingly conclude (a) that paragraph (1) of the cease and desist provisions of the Board's order against the union is here entitled to be enforced only in relation to the contract made by it with Pacific Intermountain Express Company, the immediate employer, and not in relation to any contracts made by it with other employers, with the reason for the enforcement allowed being hereafter explained; (b) that paragraph (2) of the cease and desist provisions similarly is not entitled to be enforced; and (c) that what has just been said should equally be applied to the corresponding provisions of the notice required to be posted under paragraph (1) of the affirmative action provisions of the Board's order against the union.
 
 
 20
 In granting enforcement, as indicated in clause (a) of the preceding paragraph of this opinion, of the portion of paragraph (1) of the cease and desist provisions of the Board's order, in relation to the union's contract with the immediate employer, we desire to make it clear and to emphasize, in consonance with what has precedingly been said, that we are allowing the union to be prohibited here from performing or giving effect in any way to the contract provision in the particular situation, not because of its having made the contract provision, but because of the abuse to which it has seen fit to put the provision in the specific situation. This abuse has been such that we think the Board could properly have left the union where it would not be able to make any further possible use of the provision in the particular employment situation, even if the provision itself had been generally valid.
 
 
 21
 The views here expressed make unnecessary any further consideration of the contentions of the union or of the amicus curiae, Central States Drivers Council.
 
 
 22
 Enforcement of the Board's order against the union is granted, subject only to the qualifications or limitations made by this opinion.