278 F.2d 237
 Boyd LEEDOM et al., as Chairman and Members of National Labor Relations Board, Appellants,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 108, AFL-CIO, Appellee.
GENERAL CABLE CORPORATION, Appellant,
v.
Boyd Stewart LEEDOM et al., individually and as Chairman and Members of and Constituting National Labor Relations Board, Appellees.
 No. 15346.
 No. 15377.
 United States Court of Appeals District of Columbia Circuit.
 Argued December 16, 1959.
 Decided March 24, 1960.
 
 Mr. Duane B. Beeson, Atty., National Labor Relations Board, of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. Thomas J. McDermott, Associate Gen. Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, were on the briefs, for appellants in No. 15346 and appellees in No. 15377. Mr. James C. Paras, Atty., National Labor Relations Board, also entered an appearance for appellants in No. 15346 and appellees in No. 15377.
 Mr. Joseph C. Wells, Washington, D. C., with whom Mr. Lawrence T. Zimmerman, Washington, D. C., was on the brief, for appellant in No. 15377.
 Mr. William J. Brown, Washington, D. C., with whom Mr. Louis Sherman, Washington, D. C., was on the brief, for appellee in No. 15346.
 Before WILBUR K. MILLER, BAZELON and BURGER, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 On May 1, 1957, the International Brotherhood of Electrical Workers, Local No. 108, AFL-CIO entered into a three-year collective bargaining agreement with the General Cable Corporation covering its production and maintenance employees at Tampa, Florida. The contract bar rule then in effect had been announced by the National Labor Relations Board in 1953 in General Motors Corp., 102 N.L.R.B. 1140. It provided that, during the life of any bargaining agreement with a term up to five years, no representation proceedings could be instituted by a labor organization not a party to that contract, provided a substantial part of the industry involved was covered by contracts of a similar term. It is undisputed that General Cable is a part of an industry which qualified for a three-year bar.
 
 
 2
 In September 1958 — some 16 months after the present contract was entered into — the Board revised its policies and announced that a contract would not bar an election after two years regardless of its terms. Pacific Coast Ass'n of Pulp & Paper Mf'rs, 121 N.L.R.B. 990. Thereafter, in June 1959 — ten months before the expiration of the instant three-year contract — the Board applied this reduced bar term in representation proceedings instituted by a Company employee and ordered an election to be held on July 23, 1959. Shortly before that date, the Union and the Company filed separate suits in the District Court to enjoin the Board from conducting the scheduled election. The District Court issued a temporary order under which the election was held and the uncounted ballots were impounded in the Board's custody where they remain pending disposition of this litigation. After hearing on the pleadings and affidavits, the court held that the Company "has an adequate statutory procedure for obtaining review of the determination of which it complains." Accordingly, it dismissed the Company's suit. The Company appeals in No. 15377.
 
 
 3
 With respect to the Union, however, the court concluded that it had jurisdiction because the Board's action "amounted to a retroactive application of new policy * * * and as such constituted an abuse of discretion and therefore amounted to a deprivation of property without due process of law." It thereupon granted the Union's request for a preliminary injunction. The Board appeals in No. 15346.
 
 I.
 
 4
 We think the District Court was clearly correct in dismissing the Company's suit on the ground that an adequate statutory review procedure is available.[1] By refusing to bargain with any newly elected representatives of its employees, the Company will incur a § 8 unfair labor practice charge,[2] against which it may assert the illegality of the election as a defense. Judicial review of any adverse decision in such proceedings is authorized by § 10(f) or § 10(e).[3]
 
 II.
 
 5
 We turn now to the Board's appeal from the District Court's exercise of jurisdiction to grant relief to the Union.
 
 
 6
 Ordinarily, Board determinations in § 9(d)[4] "representation proceedings are reviewable only in the courts of appeals and only when they have become the basis for a `final order' in an unfair labor practice proceeding under § 10. * * *" Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490, 491, affirmed 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210. To obtain review of such determination in an original equity suit in the District Court, "there must be a showing `of unlawful action by the Board and resulting injury * * * by way of departure from statutory requirements or from those of due process.'"[5] The Union claims here, as it did below, that the retroactive application of the shortened contract bar term violates the requirements of due process. We are constrained to hold that it does not.
 
 III.*
 
 7
 This conclusion is reached with considerable difficulty by the writer of this opinion. Antipathy to retroactive lawmaking by legislatures and courts has deep historical roots.[6] It is only by comparing the problem of retroactivity in those areas with the comparatively new area of administrative law that I am able to find special considerations which adequately support our conclusion.
 
 
 8
 The fundamental unfairness of retrospective legislation is recognized in American constitutional theory. Although the prohibition against ex post facto law bars only retrospective criminal statutes, Calder v. Bull, 1798, 3 Dall. 386, 3 U.S. 386, 1 L.Ed. 648, the courts have often reached similar results with civil legislation through the impairment of contracts,[7] and due process clauses.[8] The vice inherent in retroactivity is, of course, that it tends to destroy predictability and to undercut reliance — both important aims of the law.[9]
 
 
 9
 But in most areas of law, the need for predictability must compete with the need for change. Thus in reviewing legislation of retroactive effect, the virtues of stability must be balanced with the benefits of progress. Accordingly courts have often upheld statutes which cut off or modified private contracts where it appeared that the legislation sought to attain social purposes of greater importance than predictability and reliance.[10] Indeed the modern trend is to scrutinize more and more carefully the substance of the "vested rights" which have often been asserted in condemnation of retroactive legislation.[11]
 
 
 10
 Judicial decisions overruling prior case law present another context for the problem of retrospective application of law.[12] The Supreme Court has disavowed some early cases which appeared to hold it an unconstitutional impairment of the obligation of contracts for a state court to overrule retrospectively a prior decision.[13] But as a matter of equitable discretion, courts will apply a judgment overruling a prior decision only prospectively in order to avoid "gross injustice."[14] This is particularly true in the field of contract law, where agreements were made in reliance upon the earlier rule.[15]
 
 
 11
 Finally, the problem of retroactivity asserts itself in the comparatively new domain of administrative law. Here many of the considerations with respect to retroactive legislation and adjudication are relevant. Regulatory agencies often exercise both functions. But there are additional factors to be considered arising out of the special functions and purposes for which these agencies were in large part created to perform. The Supreme Court dealt with this newer area in the second Chenery case.[16] There the agency, sitting in an adjudicatory capacity, developed and applied a new rule of fiduciary responsibility with respect to corporate reorganizations. The Court pointed out that an administrative body, "unlike a court, does have the ability to make new law prospectively through the exercise of its rule-making powers, [and hence has] less reason to rely upon ad hoc adjudication to formulate new standards of conduct * *." But it also said that a rigid rule requiring an agency to proceed in the first instance by rule-making would rob the administrative process of needed flexibility. 332 U.S. at page 202, 67 S.Ct. at page 1580. In approving the Commission's action in that case, the Court formulated the following test: "[The evils of retroactivity] must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." 332 U.S. at page 203, 67 S.Ct. at page 1581. In short, we must determine which is the "lesser evil."[17]
 
 IV.
 
 12
 We turn now to the application of these principles to the instant case. On the one hand, we must weigh the Union's contentions that it entered into the three-year contract in reliance upon the former contract bar rules. More specifically, it asserts that a premature election threatens to deprive it of its contractual right to continued peaceful recognition, and will put it to the expense of an otherwise unnecessary organizational campaign.
 
 
 13
 The Board does not deny that the Union may have relied upon the existing bar when negotiating the contract. Nor does it gainsay that retroactive application of the new bar may work a hardship upon the Union. Rather it points out that periodic adjustments in its contract bar rules are necessary to maintain, at all times, a proper balance between the competing statutory objectives of (1) stability in industrial relations, and (2) employee freedom of choice in selecting their bargaining representatives.[18] It further contends that immediate application of its revised rule was necessary to prevent "an administrative monstrosity." DeLuxe Metal Furniture Co., 121 N.L.R.B. 995 (1958).[19] Finally, we are told that the parties were on notice not to rely upon the earlier bar, for its history demonstrates that it is subject to modification.[20]
 
 
 14
 In weighing these opposing claims, we think the balance falls in favor of the Board. Congress relied on the Board's expertise to harmonize the competing goals of industrial stability and employee freedom of choice to best achieve the ultimate purposes of the Act. Thus, when the Board exercises this discretion in determining that a shorter contract bar rule is now necessary, its judgment is entitled to great weight. While the Union does not challenge the Board's authority to prescribe a shorter bar for the future, it vigorously contends that retroactive application is capricious. But against this the Board pits two considerations: (1) to apply the bar in futuro would, in some cases, preclude the Board from putting its new policies fully into effect for as long as five years from the date the change was announced;[21] (2) simultaneous administration of the new and old rules would create an "administrative monstrosity."
 
 
 15
 In response to these contentions, the Union relies upon two cases in which courts of appeals have refused to enforce Labor Board cease and desist orders because the Board, in unfair labor practice proceedings, applied a new rule to condemn practices it had previously ignored or approved.[22] While we note that other cases appear to hold to the contrary,[23] we prefer to distinguish the cases upon which the Union relies. In the first place, judicial review in those cases was authorized by § 10 of the National Labor Relations Act and was therefore governed by § 10 of the Administrative Procedure Act. Accordingly, the Board's actions could have been, and were, set aside for other than constitutional reasons.[24] Second, in those cases the Board made conduct actionable which theretofore had not been actionable. In the instant case, the Board is not proscribing conduct prior to the election under its new contract bar terms.
 
 
 16
 Finally, and perhaps most important, the Board in the cases upon which the Union relies had readily available alternatives which were not present here. By announcing its new rules prospectively, in order to allow the parties involved time to bring their practices and agreements into conformity with the new requirements, it could have avoided proscription of past conduct which was presumably legal when undertaken. Here in the nature of the problem the Board could not promulgate these rules prospectively without having to wait up to five years to put its new policies into full effect. This drag on the administrative process would tend to destroy its flexibility.
 
 
 17
 Administrative flexibility is, after all, one of the principal reasons for the establishment of the regulatory agencies.[25] It permits valuable experimentation[26] and allows administrative policies to reflect changing policy views.[27]
 
 
 18
 The jurisdiction of the District Court does not depend on whether the Board's retroactive application of the shortened bar term is wise — but whether the requirements of constitutional due process preclude the Board from determining that the considerations of orderly procedure and administrative flexibility outweigh the disadvantages to the Union by way of the expense and turmoil of an election and the possibility of losing its representation rights. We hold that the Board is not so precluded.
 
 V.
 
 19
 One further matter requires discussion. The Union's complaint states a second cause of action which the District Court found unnecessary to consider since it enjoined the entire election. The Union urges if we set aside the relief granted below, as we have done, that we remand the case in order to allow the trial court to consider this second cause of action. The Board recognizes that ordinarily a case which is reversed on appeal should be remanded to the District Court for consideration of an issue left undecided.[28] But it contends that such a course would not be appropriate in this case since (1) there is no question of fact presented, (2) the Union's contentions are wholly without merit, and (3) the counting of the ballots should not be further postponed.
 
 
 20
 Were we to remand this case for a determination by the District Court, with the possibility of further appeal to this court, the three-year contract will have expired and the Union will have obtained the relief it requested even though it loses on the merits.
 
 
 21
 There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See Blair v. Oesterlein Machine Co., 275 U.S. 220, 225, 48 S.Ct. 87, 72 L.Ed. 249. * * * Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037.
 
 
 22
 Since we think the Union's allegations are insubstantial, the Board is entitled to immediate relief.[29]
 
 
 23
 The allegations of the second cause of action, which we now consider, are that the Board violated § 9(c)(1) of the Act by (1) allowing the Employees Committee, an independent union, to intervene in the decertification proceedings, and (2) by placing the Employees Committee's name on the ballot so that the employees had a three-way choice (incumbent union, new union, no union) instead of a simple choice between the incumbent union and no union. Section 9 (c) (1) provides that whenever a petition for certification or decertification is filed "the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation * * * exists shall provide for an appropriate hearing * * *. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." 61 Stat. 143 (1947), 29 U.S. C.A. § 159(c)(1).
 
 
 24
 We find nothing in this language or in the legislative history, upon which the Union relies, which can be said to amount to a "clear and mandatory" direction that intervention of a rival union in the decertification proceedings be denied or that the election ballot provide only two alternatives: the incumbent union, or none. See Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490, affirmed, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210. Hence, review by way of this original equity suit in the District Court will not lie. See International Ass'n of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 276 F.2d 514. No. 15346 is reversed and remanded with directions to dismiss the complaint.
 
 
 25
 No. 15377 is affirmed.
 
 
 26
 WILBUR K. MILLER and BURGER, Circuit Judges, concur in the result and in parts I, II, IV and V of the foregoing opinion.
 
 
 
 Notes:
 
 
 [1]
 See Norris, Inc. v. National Labor Relations Board, 1949, 85 U.S.App.D.C. 106, 177 F.2d 26; Myers v. Bethlehem Ship-building Corp., 1938, 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed. 638
 
 
 [2]
 National Labor Relations Act, as amended, 61 Stat. 140 (1947), 29 U.S.C.A. § 158(b)
 
 
 [3]
 61 Stat. 146 (1947), 29 U.S.C.A. § 160 (e), (f)
 
 
 [4]
 61 Stat. 143 (1947), 29 U.S.C.A. § 159 (d)
 
 
 [5]
 De Pratter v. Farmer, 1956, 98 U.S. App.D.C. 74, 76, 232 F.2d 74, 76, quoting from Inland Empire District Council, etc. v. Millis, 1945, 325 U.S. 697, 65 S. Ct. 1316, 89 L.Ed. 1877. Cf. American Federation of Labor v. National Labor Relations Board, 1940, 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347
 
 
 *
 Judges WILBUR K. MILLER and BURGER do not join in section III of this opinion
 
 
 [6]
 See Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn.L.Rev. 775 (1936)
 
 
 [7]
 E. g., Fletcher v. Peck, 1810, 6 Cranch 87, 10 U.S. 87, 3 L.Ed. 162. Cases are collected in Greenblatt, Judicial Limitations on Retrospective Civil Legislation, 51 Nw.U.L.Rev. 540 (1956); Smead, supra note 6; Stimson, Retroactivity in Law, 38 Mich.L.Rev. 30 (1939); Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692 (1960)
 
 
 [8]
 E. g., Ochoa v. Hernandez y Morales, 1913, 230 U.S. 139, 33 S.Ct. 1033, 57 L. Ed. 1427, and cases collected in Greenblatt, Stimson and Hochman, supra note 7; and Smead, supra note 6
 
 
 [9]
 "Law as a guide to conduct is reduced to the level of mere futility if it is unknown and unknowable." Cardozo, The Growth of the Law 3 (1924)
 
 
 [10]
 E. g., Norman v. Baltimore & O. R. Co., 1935, 294 U.S. 240, 306-313, 55 S.Ct. 407, 79 L.Ed. 885 (abolition of the gold standard); Home Bldg. & Loan Ass'n v. Blaisdell, 1934, 290 U.S. 398, 435, 54 S. Ct. 231, 78 L.Ed. 413 (mortgage moratorium); Louisville & N. R. Co. v. Mottley, 1911, 219 U.S. 467, 482, 31 S.Ct. 265, 55 L.Ed. 297 (regulation of railroad rates); Seese v. Bethlehem Steel Co., 4 Cir., 1948, 168 F.2d 58 (regulation of wages and hours). See generally, Hochman, supra note 7 at 697
 
 
 [11]
 "It is of no great help to say that the rights cannot be changed because they are `vested', for by `vested' we mean essentially that we will not allow them to be changed." Horwitt v. Horwitt, D.C. D.Conn.1950, 90 F.Supp. 528, 530
 See also Greenblatt, supra note 7 at 561; and compare Welch v. Henry, 1938, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87; Battaglia v. General Motors Corp., 2 Cir., 1948, 169 F.2d 254; Sagastivelza v. Puerto Rico Housing Authority, 1 Cir., 1952, 195 F.2d 289, with Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 1932, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; Ettor v. City of Tacoma, 1913, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Forbes Pioneer Boat Line v. Board of Commissioners, 1922, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647.
 
 
 [12]
 In an apparent effort to avoid the impact of the rules relating to retroactive legislation, the Board likened its revision of its contract bar rules to "the judicial practice of applying each pronouncement of a rule of law to the case in which the issue arises and to all pending cases in whatever stage * * *." DeLuxe Metal Furniture Co., 121 N.L.R.B. 995, 1007 (1958)
 
 
 [13]
 Tidal Oil Co. v. Flanagan, 1924, 263 U.S. 444, 452, 44 S.Ct. 197, 68 L.Ed. 382. Compare Great Northern R. Co. v. Sunburst Oil & Refining Co., 1932, 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360
 
 
 [14]
 Tidal Oil Co. v. Flanagan, supra, 263 U.S. at page 452, 44 S.Ct. at page 199
 
 
 [15]
 See Snyder, Retrospective Operation of Overruling Decisions, 35 Ill.L.Rev. 121, 130-40 (1940); Note, Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions, 60 Harv.L.Rev. 437, 441-43 (1947) (both collecting cases)
 
 
 [16]
 Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995
 
 
 [17]
 Addison v. Holly Hill Fruit Products, 1944, 322 U.S. 607, 622, 64 S.Ct. 1215, 88 L.Ed. 1488. Although Chenery and Addison were not predicated upon constitutional considerations, they formulate, with respect to retroactive law, the traditional due-process analysis of balancing competing interests. See, e. g., Nebbia v. People of State of New York, 1934, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940
 
 
 [18]
 See General Motors Corp., 102 N.L.R.B. 1140 (1953)
 
 
 [19]
 Deluxe Metal and Pacific Coast Ass'n of Paper & Pulp Mf'rs, 121 N.L.R.B. 990 (1958), were companion cases enunciating the Board's new contract bar rules. In Deluxe the Board rejected the petitioner's request that any new policy applyin futuro, saying:
 "* * * in establishing revisions of precedent there is always the likelihood that such revisions will bring about a different result in some pending proceeding than would have obtained under a prior policy or procedure. This is true not only of the case in which such revisions are first announced and applied, but also with respect to any other case which has not yet been decided, because it has not reached the Board's level or is at one of the other stages of the administrative process such as the hearing. Thus, to adopt these revisions of contract-bar policy and then allow the instant proceeding as an exception without permitting a similar exception to all pending cases would be inequitable. To establish an in futuro rule for all pending cases would create an administrative monstrosity. The judicial practice of applying each pronouncement of a rule of law to the case in which the issue arises and to all pending cases in whatever stage is traditional and, we believe, the wiser course to follow." [Id. at 1006-07.]
 
 
 [20]
 During the 26-year history of the Labor Board, it has altered the length of the bar no less than five times. For the first years of the Wagner Act, the Board declined to recognize any contract as a bar to the conduct of representation elections. See New England Transportation Co., 1 N.L.R.B. 130 (1934). In 1938 the Board, for the first time, determined not to hold an election in a situation where a contract of a one-year term was in effect. Superior Electrical Products Co., 6 N.L.R.B. 19
 Three years later the Board made another revision in its policy by treating a two-year contract as a bar to an election in a situation where contracts of that term had been customary with the employer involved. Owens-Illinois Pacific Coast Co., 36 N.L.R.B. 990 (1941). A further shift of policy occurred in 1943, when the Board held that a three-year contract might be recognized as a bar to an election if it were shown that contracts of this duration are customary in the industry or with the particular employer. Inland Container Corp., 47 N.L. R.B. 952. Two years later, the requirement that a two-year contract be customary in the industry was dropped. Uxbridge Worsted Co., 60 N.L.R.B. 1395 (1945); United States Finishing Co., 63 N.L.R.B. 575 (1945); Reed Roller Bit Co., 72 N.L.R.B. 924 (1945).
 The two-year bar remained in effect until 1953 when the Board decided in General Motors Corp., 102 N.L.R.B. 1140, to withhold its election procedures during the entire term of a five-year contract in the situation where "a substantial part of the industry" was covered by such long-term agreements. Finally, in the fall of 1958, the Board put into effect its current set of rules which were applied in this case. See Pacific Coast Ass'n of Pulp & Paper Mf'rs, 121 N.L.R.B. 134.
 
 
 [21]
 Under the General Motors case, note 18 supra, a contract could bar an election for five years, if a "substantial part of the industry" was covered by similar long-term agreements
 
 
 [22]
 National Labor Relations Board v. International Brotherhood of Teamsters, etc., Local No. 41, 8 Cir., 1955, 225 F.2d 343 (Board reversed rule that employer and union did not illegally encourage union membership by conferring full discretion over seniority to the union); National Labor Relations Board v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F.2d 141 (Board asserted jurisdiction over construction industry for the first time, and found parties guilty of operating under a closed shop agreement)
 
 
 [23]
 In Optical Workers', etc. v. National Labor Relations Board, 5 Cir., 1955, 227 F.2d 687; National Labor Relations Board v. Kobritz, 1 Cir., 1951, 193 F.2d 8, and National Labor Relations Board v. Baltimore Transit Co., 4 Cir., 1944, 140 F.2d 51, the courts allowed the Board to apply revised jurisdictional standards retroactively and enforced appropriate cease and desist orders
 
 
 [24]
 See Administrative Procedure Act, § 10(e), 60 Stat. 243 (1946), 5 U.S.C.A. § 1009(e), enumerating the grounds upon which agency action may be set aside
 
 
 [25]
 Gellhorn & Byse, Administrative Law 4 (1954)
 
 
 [26]
 See opinion of Hutcheson, J., concurring in Eagle Cotton Oil Co. v. Southern R. Co., 5 Cir., 1931, 51 F.2d 443, 445 (adopted by Justices Holmes and Brandeis, dissenting in Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 1932, 284 U.S. 370, 390, 52 S.Ct. 183, 76 L.Ed. 348; Shawmut Ass'n v. Securities and Exchange Commission, 1 Cir., 1945, 146 F. 2d 791, 796; cf. Federal Communications Commission v. WOKO, Inc., 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204
 
 
 [27]
 See Gellhorn & Byse, supra note 25 at 160-69
 
 
 [28]
 See, e. g., State Wholesale Grocers v. Great Atlantic & Pacific Tea Co., 7 Cir., 258 F.2d 831, 839, certiorari denied, 1958, 358 U.S. 947, 79 S.Ct. 353, 3 L.Ed.2d 352
 
 
 [29]
 Compare Ward v. Anderson, 1953, 93 U.S.App.D.C. 156, 208 F.2d 48; United States v. Latrobe Const. Co., 8 Cir., 1957, 246 F.2d 357, 362