MIAMI NEWSPAPER PRINTING PRESSMEN'S UNION LOCAL 46, Appellant,

v.

Frank W. McCULLOCH, et al., individually and as Chairman and Members of and constituting the National Labor Relations Board, Appellees.

No. 17459.

United States Court of Appeals District of Columbia Circuit.

Argued June 13, 1963.

Decided July 18, 1963.

5. See Hogan and Snee, The McNabb-Mallory Rule: Its Rise, Rationale and Rescue, 47 Geo. L.J. 1, 27 (1958).

Mr. Neal Rutledge, Miami, Fla., with whom Messrs. Herbert S. Thatcher and David S. Barr, Washington, D. C., were on the brief, for appellant.

Mr. Stephen B. Goldberg, Attorney, National Labor Relations Board, of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, General Counsel, National Labor Relations Board, at the time the brief was filed, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and James C. Paras, Attorney, National Labor Relations Board, were on the brief, for appellees. Mr. Hans Lehmann, Attorney, National Labor Relations Board, also entered an appearance for appellees.

Before WILBUR K. MILLER, BASTIAN and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

This case arises out of a labor dispute between Local 46 of the Miami Newspaper Printing Pressmen's Union and the Miami Herald Publishing Company, publisher of the "Miami Herald" in the City of Miami, Florida. Petitioner desired certification by the National Labor Relations Board as the bargaining agent for the employees of the Miami Herald. In a challenge to the Board's failure to certify an election, pursuant to Section 9(c) of the National Labor Relations Act (the Act) (61 Stat. 144, as amended, 29 U.S.C. § 159), the Union sued the Board and its individual members for declaratory and injunctive relief in the United States District Court for the District of Columbia. The Union appeals from an order of that court dismissing the suit for lack of jurisdiction and prematurity.

Important issues are presented concerning application of the doctrine of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), which engrafted an exception upon the otherwise exclusive means of judicial review of Board orders provided by Sections 10(e) (f) of the Act (61 Stat. 147, as amended, 29 U.S.C. §§ 160(e) (f)). The exception is made operative when the Board acts "in excess of its delegated powers and contrary to a specific prohibition in the Act," and when such action causes the "depriv[ation] * * * of a 'right' assured * * * by Congress." This Court must decide (1) whether the exception applies to a failure by the Board to perform an allegedly mandatory act, and, if so, (2) whether the present case is within the exception. An understanding of these issues requires a somewhat detailed statement of the factual background.

I

On August 1, 1961, the Union began a concededly lawful economic strike against the Herald. While the strike was in progress, the Board's Regional Director, pursuant to a petition for certification filed by the Union, directed that an election be held on July 25, 1962.[1] The Herald then requested review, as author-

1. This action was taken after a hearing before a Hearing Examiner, pursuant to the Board's delegation (under § 3(b) of the Act, 73 Stat. 542, 29 U.S.C. § 153 (b)) to the Regional Director of its powers under Section 9.

ized by Section 3(b), by the Board of the order directing the election. By telegraphic order on July 20, the Board, acting through only one of its members, denied the request, stating that it raised "no substantial issue of fact or law warranting a review."

Thereafter, on July 24, the Herald brought an action in the United States District Court in Florida, to enjoin the scheduled election. The contention was that the denial of the request to review the direction of election was invalid because passed upon by only one Board member, in contrast with Section 3(b) which authorizes delegation by the Board "to any group of three or more members any or all of the powers which it may itself exercise." The court declined to enjoin the election, which was held as scheduled, but it ordered the ballots impounded pending final determination of the proceeding before it.

Pending the court's hearing on the merits, the Board, on August 22, 1962, vacated the July 20 order denying the Herald's request for review, granted the request, and set aside the July 25 election. On August 24, the Board requested briefs from both the Union and the Herald on the merits of the Regional Director's direction of election. Subsequently, the Florida court, over the objections of both the Union and the Herald,[2] dismissed the Herald's action as moot, since the desired relief had been granted by the Board.

On November 8, 1962, the Board affirmed the earlier direction of election by its Regional Director, thus finding that the Herald was incorrect in its challenge. However, rather than reinstating the

July 25 election, the Board directed the Regional Director to conduct a re-run election, which thereafter was set for December 5, 1962. In its decision, the Board reserved the question of voting eligibility of replaced economic strikers who had been on strike longer than twelve months, stating that it would determine that question "should the votes of the economic strikers be sufficient in number to affect the results of the election * * * ;" and the Regional Director was ordered to make appropriate challenges to ballots of economic strikers. This question was presented by that part of Section 9(c)(3) which provides:

> "Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this subchapter *in any election conducted within twelve months after the commencement of the strike.*"[3]

It is the italicized portion of this section which gives rise to the problems with which this case is concerned: The Union began its strike on August 1, 1961; thus, the twelve-month period to which Section 9(c)(3) refers ended on July 31, 1962. Prior to the re-run election, the Union instituted the action from which this appeal was taken, to require the Board to certify the July 25 election, pursuant to the allegedly mandatory requirement of Section 9(c)(1) that if the Board finds that a "question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." Since the Board found that the July 25 election had been properly di-

---

2. Both parties argued that the Board did not have jurisdiction to reconsider the earlier action of its single member, but for differing reasons. The Herald maintained that, since the original denial of review was invalid, the election itself must be considered as never validly having been directed. The Union, for reasons which will become apparent, urged the correctness of the denial of review, and, hence, the validity of the election.

3. 73 Stat. 542, 29 U.S.C. § 159(c) (3). (Emphasis added.) The basis for the Herald's challenge to the original direction of election was the alleged failure on the part of the Board to conform with this provision by adopting regulations for the voting of economic strikers. The Board's policy is to rule on such issues in its decisional process, rather than to adopt inclusive regulations to meet the complexity of a problem having innumerable factual variations.

rected, the argument is that it was required to certify the results thereof.

The District Court did not reach the merits of the Union's arguments. It found that it lacked jurisdiction because the Union " * * * failed to establish that the representation determinations complained of violated either a mandatory provision of the National Labor Relations Act or constitute a deprivation of due process under the Constitution of the United States." Rather, it affirmatively found that the Board's actions were merely an exercise of its "broad discretionary authority under the Act," and therefore not subject to District Court review. The court held further that, since the Board had not yet passed on the voting rights of the economic strikers, the "action is at this time premature."

The second election was held on December 5. Pending the hearing on the Union's appeal from the dismissal of its action, this Court ordered that the ballots of both elections be impounded, because "this appeal presents very close and serious questions."

There is no dispute as between the Union and the Board concerning any of the happenings heretofore outlined, nor their sequence in time. There is disagreement as to the principles of law properly applicable. Indeed, both parties have been quite candid in stating the motivations behind their respective positions. The results of neither election have been determined. The Union readily admits that it has little hope of emerging victorious in the December 5 election, even if it had the benefit of the votes of the economic strikers who participated. This is so because not all of the original strikers who were able to vote on July 25 were available at the

later election, due to the necessity of finding employment in other areas. For its part, the Board concedes its reason for refusing to certify the early election to be its serious doubt of the validity of its own procedures, specifically its use of the single-member Board to pass upon the Herald's request for review of the direction of election. Having in mind the practical aspects of labor relations, the Board anticipated that the Herald would refuse to bargain on the basis of the July election, on the ground that it was invalid; that, upon subsequent judicial review of a probable unfair labor practice charge, a court of appeals might uphold the Herald's position; that a new election would then be ordered; and that, as a result, labor relations would remain unsettled for an extended period of time. To obviate this possibility, the Board sought to hold a second election which would be free of the possible infirmity of the first.

## II

■ The general rule that Board orders are judicially reviewable only under Section 10 of the Act is subject to two major exceptions: (1) If Board action results in a denial of a constitutional right, Fay v. Douds, 172 F.2d 720 (2d Cir., 1949), or (2) if the Board acts "in excess of its delegated powers and contrary to a specific prohibition in the Act," (Leedom v. Kyne, supra), then a federal court has jurisdiction of a suit under 28 U.S.C. § 1337[4] to challenge such action. We find in this case no denial of a constitutional right,[5] and proceed to consideration of the second exception.

In the case of Leedom v. Kyne, the Board had ruled that the appropriate bargaining unit should include a small group of non-professional employees in

4. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

5. The Union alleges that it was denied due process of law when the Board, on August 22, by telegraphic order, vacated the July 25 election without holding a hearing. A hearing was subsequently held, however, and the Union submitted its case. As will appear, we hold that this subsequent hearing was sufficient to remedy any defect which may have existed in the Board's prior procedure.

a larger group of professionals, without obtaining the consent of the latter. Section 9(b) grants the Board wide discretion in determining the appropriate unit, *"Provided,* That [it] shall not (1) decide that any unit is appropriate * * * if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; * * *."[6] The Board interpreted the proviso as requiring consent of the professionals only when they constituted a minority of the total group. This Court and the Supreme Court disagreed, holding that consent was required in all instances where both professional and non-professional employees were involved. The Board thus had acted contrary to an express prohibition of the Act and in derogation of a right granted to professional employees; and the federal district court therefore had jurisdiction of a suit challenging the Board's action.[7]

The language which the Supreme Court held had been violated was in terms of "shall not," words of prohibition. The provision with which we are here concerned, Section 9(c)(1), is in terms of requirement: "If the Board finds upon the record of such hearing that such a question of representation exists, it *shall* direct an election by secret ballot and *shall* certify the results thereof." (Emphasis added.) We are unable to read the Court's decision in Leedom v. Kyne as limited to the negatively worded prohibition there involved. If, after the Board finds that a question of representation exists, and an election is held, the requirement that it "shall" certify the results is mandatory, then a failure to so certify would be prohibited by the Act and in excess of the Board's powers. A party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition.[8]

Clearly, 9(c) (1) is not mandatory in all instances. This Court, other courts of appeals, and the Board have recognized the authority and duty of the Board to set aside an election which has been unfairly conducted either be-

6. 61 Stat. 143, 29 U.S.C. § 159(b).

7. The reason behind the Court's holding is clear. It is established that a Board order in certification proceedings, pursuant to Section 9, is not a "final order" and therefore does not qualify for judicial review under Section 10. A. F. L. v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). The only means by which a certification can be judicially reviewed under Section 10 is in a subsequent unfair labor practice proceeding. See May Dep't Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945). While this procedure is available to an aggrieved employer (by refusing to bargain with a certified representative) and, to a lesser extent, to the victorious union, it is practically unavailable to an unsuccessful union. See Cox, The Major Labor Decisions of the Supreme Court, October Term 1958, A.B.A. Sect. of Labor Relations Law, 1959, reprinted in Gellhorn & Byse, Administrative Law: Cases and Comments 441 (4th ed. 1960); The Supreme Court, 1958 Term, 73 Harv.L.Rev. 84, 217 (1959). Indeed, this Court has recognized that the Leedom v. Kyne remedy was not devised for the benefit of an em-

ployer. *Atlas Life Ins. Co. v. Leedom,* 109 U.S.App.D.C. 97, 284 F.2d 231 (1960). See *Cox v. McCulloch,* 114 U.S. App.D.C. 302, 315 F.2d 48, 50 (1963): "Since an unsuccessful union in a certification proceeding before the Board has no adequate remedy by review, and it appearing that certification of [this] organization as bargaining agent * * * would be in direct contravention of the Act, the jurisdiction of the District Court in a Leedom v. Kyne type of action should be determined." Compare *Wolf Corp. v. S. E. C.,* 115 U.S.App.D.C. 75, 317 F.2d 139 (1963).

8. See Cox, supra note 7, at 444: "Most of the verbs in other parts of Section 9 are prefaced by 'shall.' There is nothing to suggest that Section 9(b) (1) differs from any other statutory rule concerning the conduct of representation proceedings. Every plain violation of a statute rule must therefore be 'jurisdictional' in the same sense that the plain violation of Section 9(b) (1) was 'jurisdictional' in Leedom v. Kyne." We thus do not consider our decision on this point as an enlargement of the exception, which the Supreme Court held in McCulloch v. Sociedad Nacional de Marineros de Hon-

cause of employer or union coercion, or for some reason having to do with the mechanics of the election process.[9] In such cases, however, the vice recognized resulted in unfairness in the election itself, giving either union or employer an extra advantage, or, for example, denying an employee his right to vote. We have no such situation before us. Here, the Board acted to set aside the July 25 election because of an apparent infirmity in its own procedure. The Board had allowed one of its members to pass upon objections to the direction of election filed by the Miami Herald, while Section 3(b) authorizes delegation of Board powers to "any group of three or more members." Whether this procedure was in fact unlawful is not before us and is immaterial to our view of the case. In any event, the subsequent action of the Board in holding adversary hearings remedied, after the fact, any infirmity which might have occurred.[10] The apparent procedural defect was one which could be, and was, rectified; and no in-

jurious effect on the July 25 election itself has been advanced at any point in these proceedings. On these facts, we hold that 9(c) (1) imposes a mandatory duty on the Board to certify the results of an election. The failure to do so amounted to arbitrary and capricious conduct by the Board, depriving the Union of a right given by the Act. Thus, the violation of that duty gave the District Court jurisdiction of the Union's action.[11]

### III

Prior to 1959, Section 9(c) (3) provided that "Employees on strike who are not entitled to reinstatement shall not be eligible to vote." The legislative history of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) contains references to union dissatisfaction with the provision, and examples of its abuse by some employers. As a result, the section was amended to permit economic strikers to vote, under Board regulations, " * * * in any election conducted within twelve months after the

duras, 372 U.S. 10, 17, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), it did not intend. Compare Inland Empire District Council, etc. v. Millis, etc., N. L. R. B., 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945), and its interpretation of 9(c) when it contained discretionary ("may") language.

9. N. L. R. B. v. National Truck Rental Co., 99 U.S.App.D.C. 259, 239 F.2d 422 (1956), cert. denied, 352 U.S. 1016, 77 S.Ct. 561, 1 L.Ed.2d 547 (1957); Cross Co. v. N. L. R. B., 286 F.2d 799 (6th Cir., 1961); N. L. R. B. v. National Container Corp., 211 F.2d 525 (2d Cir., 1954); James Lees & Sons Co., 130 N.L.R.B. 290 (1961); Repcal Brass Mfg. Co., 109 N.L.R.B. 4 (1954).

10. The Board's argument in this case unwittingly supports our holding on this point. On this appeal, the Board argued that the subsequent hearing nullified any argument that the Union was denied due process of law when the Board, by telegraphic order, set aside the July 25 election. We agree with the Board's argument, and thus deny the Union's constitutional argument. We proceed a step further and hold that the same Board argument nullifies the expressed reason for setting aside the first election. It will be recalled that the Miami Herald

objected to the action of the Florida federal court dismissing its complaint, contending that the Board no longer had jurisdiction of its objections to the direction of election. Presumably, the Board felt that it could still validly consider the Herald's objections.

11. This is not contrary to prior rulings of this Court denying jurisdiction to review Board orders in certification proceedings. See, e. g., Milk & Ice Cream Drivers, etc. v. McCulloch, 113 U.S.App. D.C. 156, 306 F.2d 763 (1962); Leedom v. I. B. E. W., 107 U.S.App.D.C. 357, 278 F.2d 237 (1960); International Ass'n of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 276 F.2d 514, cert. denied, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed. 2d 46 (1960); National Biscuit Div., etc. v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101, cert. denied, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). These cases were concerned with challenges to Board action in the area of directing elections, and determination of the "appropriate unit." Section 9(c) (1) does not use mandatory language in referring to the initial action in certification proceedings. Whether a question of representation exists is within that area of expertise in which courts hesitate to interfere.

commencement of the strike." Referring to the new provision, Congressman Griffin, one of the sponsors of the LMRDA, stated:

"Section 702 [now 9(c) (3)] relaxes the present ban on voting by economic strikers in representation elections. Two limitations are imposed. First, economic strikers are not to be eligible to vote after twelve months after the commencement of the strike. In other words, a maximum length of time is established." [12]

The Union argues that the language of the new Section 9(c) (3) and its legislative history conclusively show that the economic strikers who remained eligible to vote in the July 25 election would be precluded from voting in the December 5 election, since more than one year had elapsed from the date the strike began. The Board, on the other hand, urges that the question is premature for judicial determination, in that it has not yet had the opportunity to decide whether the 9(c) (3) ban would apply in the present situation. In any event, the question is a substantial one, but we do not find it necessary for the present case to decide it.

Undisputed by the Board is the Union's assertion that many of the economic strikers who voted on July 25 were unavailable, for various reasons, at the December election. Thus, many of the strikers were disenfranchised by the Board's action. As we have pointed out, the result was unnecessary and it should not be condoned. The Board argues, validly we believe, that 9(c) (3) does not afford an unalterable right to have an election within twelve months of the beginning of the strike. We agree, but the argument is inapplicable here. In point of fact, an election was held; this being so, the protective clause regarding

economic strikers was invoked, and an enforceable right was conferred upon them.

There being no supportable reason for the Board to consider the December election, the argument that the question of the voting rights of economic strikers in that election is premature is not a bar to assumption of jurisdiction of this case by the District Court.

In light of the views expressed in this opinion, the Union is entitled to have the Board certify the results of the July 25, 1962, election. Accordingly, we reverse the action of the District Court dismissing the complaint, and remand the case to that court for further proceedings not inconsistent herewith.

Reversed and remanded.

---

12. 105 Daily Congressional Record, A 7915, September 4, 1959. The Senate conferees explained the new section as follows:

"The proposal follows the Goldwater bill and the administration's recommendations except that economic strikers would

not be permitted to vote after one year." 105 Daily Congressional Record, 5906, August 28, 1959. See further, the remarks of Congressman Barden, 105 Daily Congressional Record, A 8061, September 4, 1959.