93 So.2d 154

Sarah Mable WEBB

v.

BANK OF BREWTON.

3 Div. 777.

Supreme Court of Alabama.

Jan. 10, 1957.

Rehearing Denied March 7, 1957.

N. S. Hare, Monroeville, for appellant.

Wm. G. Caffey, Mobile, and Hugh M. Caffey, Jr., Brewton, for appellee.

consideration of this conveyance, the grantees shall furnish and provide the grantors with a good and suitable home, either with the grantees or elsewhere, and will also adequately support the grantors and furnish them with ing this obligation to continue through-suitable and reasonable food and cloth-out the lifetimes of both grantors. The grantors hereby consent and agree that the grantees may sell the above described property and execute conveyance of such character as will be suitable to pass a good title to the purchaser thereof, if the grantees find it advisable to make such sale in order to enable (them) to carry out their obligations hereunder. The grantees shall also have the right and privilege to mortgage the said property, if they so desire, and this conveyance shall not in any manner restrict the execution of a good and proper mortgage of the premises, $2.20 revenue thereon."

██ The bill of complaint invokes two theories on which relief is sought. One is that complainant was mentally incapacitated to execute a valid deed; and the other is that, as shown on its face, a material part of the consideration for the deed was an agreement by the grantees to support her and her husband during their lives. The mortgagee had notice of complainant's right to vacate the deed by its recitals. Polauf v. Etzel, 237 Ala. 663, 188 So. 909. Before this suit was filed complainant had maintained a suit in equity against the Claytons and obtained a decree cancelling the deed in question under her option right provided in section 15, Title 20, Code. Appellee bank was not made a party to that litigation and the decree is not controlling on it.

· If complainant was mentally competent to make the deed, the next question is dependent upon that feature of the clause quoted, which is as follows:

## PER CURIAM.

This is a suit in equity filed by appellant to vacate and annul a mortgage executed by Goldie and C. W. Clayton, Jr., to appellee bank. There was a final decree denying relief on evidence taken ore tenus.

Complainant and her husband had executed a deed conveying a house and lot to Goldie and C. W. Clayton, Jr. The property was owned solely by complainant. Goldie Clayton is the daughter of complainant, and C. W. Clayton, Jr., is the husband of Goldie Clayton. They executed the mortgage to appellee bank. The deed by complainant and her husband was dated January 1, 1952, and contained the following clause:

"It is understood and agreed between the parties hereto, that as the

"The grantees shall also have the right and privilege to mortgage the

said property, if they so desire, and this conveyance shall not in any manner restrict the execution of a good and proper mortgage of the premises".

The complainant endorsed on the bill of complaint a demand for a trial by jury on the basis of section 1112, Title 7, Code, having application to a statutory bill to quiet title. The court on motion of respondent struck the demand and tried the suit without a jury. Complainant has assigned that ruling as error.

■ It is apparent that the purpose of the bill is to invoke the right to apply section 15, Title 20, Code, to the mortgage. The bill shows that without any statutory authority a court of equity has jurisdiction to set aside the mortgage as a cloud on complainant's title if it is subject to the option conferred by that statute. The allegations prescribed by section 1110, Title 7, Code (to quiet title) were wholly unnecessary to confer jurisdiction and added nothing to the equity of the bill. When the purpose of the bill is to obtain some recognized equitable relief, in addition to declaring a status as provided in sections 1109 and 1112, Title 7, Code, the right to a jury trial granted by section 1112 does not apply. Ex parte Baird, 240 Ala. 585, 200 So. 601.

■ Insofar as the mental capacity of complainant is concerned, the evidence is in much conflict. The trial court had the witnesses before him and his decision in that respect will not be reversed unless it is clearly contrary to the great weight of the evidence. Section 17(1), Title 13, Code, is not controlling under those circumstances. Andrews v. Grey, 199 Ala. 152, 74 So. 62; Taylor v. Hoffman, 231 Ala. 39, 163 So. 339. Applying that principle, we will not reverse the finding of the trial court on that state of the evidence.

With respect to the validity of the mortgage, a finding of facts by the court is set out in the decree on the basis of which the court declared "that the complainant by her conduct has waived and is estopped to assert as against the cross complainant any right to cancel or avoid said mortgage". The facts thus found by the court are as follows:

"The court further finds and decrees that complainant, in negotiating with her daughter, Goldie W. Clayton and her son-in-law, Charlie W. Clayton, Jr., to take her and her husband into their home at Atmore and support them, insisted on the Claytons building an additional room at their Atmore dwelling for use by complainant and her husband and in order to enable the Claytons to obtain a loan for the building of said room, complainant agreed to convey the property described in the aforesaid deed to the Claytons and to authorize them to mortgage said property to obtain such loan. The court further finds and decrees that it was the purpose and intent of complainant in executing said deed that the Claytons should borrow money with which to build said room and should secure such loan by a mortgage on the property conveyed, which mortgage should not in any manner be restricted or impeachable by reason of the fact that a material part of the consideration for the deed or conveyance from complainant was an agreement for the support of herself and her husband. The court further finds and decrees that under and pursuant to the authority conferred by said agreement between complainant and the Claytons and by the said deed, the Claytons applied to and obtained from the cross complainant loans totaling the principal sum of $1141.50 on the security of the mortgage, a copy of which is attached to the cross bill as Exhibit C. The court further finds from the evidence that cross complainant made said loans in reliance on the authority of the Claytons to secure the same by mortgage on the property described in said deed to them, and in

reliance on the agreement of complainant that such mortgage would be unrestricted or unimpeachable by complainant. The court further finds from the evidence that the complainant by her conduct has waived and is estopped to assert as against the cross complainant any right to cancel or avoid said mortgage".

The court then in the usual form decreed foreclosure as sought by the cross bill, to which we have not referred but which is shown by the record. There is no complaint as to the form of that feature of the decree.

The difficult question presented is whether a grantor in a deed by which an option is created under section 15, Title 20, Code, can so agree or conduct herself at the time of executing the deed as to permit her grantee in it to execute a mortgage on the some property which would not be affected by such option. We do not find where the question has been decided or presented. It is not the same as applies to an exercise of the option when only the grantee in the deed is affected. But a study of the applicable principle to that situation is appropriate, we think. In the case of Pace v. Wainwright, 243 Ala. 501, 10 So.2d 755, 756, we had occasion to discuss that question. In that case appellee succeeded in enforcing the option right in respect to a deed made to the appellant. The appellant contended that there was no such agreement as the statute (section 15, supra) contemplates, but that the deed was made with the intent on the part of the grantor to hinder, delay or defraud her creditor then existing, and that she has no standing in equity to secure the benefit of a fraudulent transaction. The court referred to the "unclean hands" principle of equity; and the limitation of it "that sometimes the courts of equity will enforce a right growing out of a transaction, notwithstanding unclean hands, when to do so would uphold the public policy of the state evidenced by a statute so declaring, where guilt is not equal to the higher right of the public", citing 17 C.J.S., Contracts, § 278, pp. 665, 666, and further observed that "the court will not through this maxim make abortive a statute enacted for the general welfare, and will sometimes grant relief by virtue of such a statute, when complainant is a party to a transaction which the statute was designed to prohibit, but when to deny relief would nullify it". But it was observed that a complainant cannot obtain the benefit of this statute (or any statute) "when the transaction in question was conceived and consummated in fraud having a purpose and tendency to work injury by one seeking to make it available. So that the question of fraud in purpose and tendency is one which controls appellee's standing in this case". The court then found that the grantor had the purpose to defraud her creditors by the execution of the deed and, therefore, could not have the benefit of section 15, supra, (though otherwise she might have done so).

In an earlier case it had been held that relief will be denied a grantor who executed a deed with the intent to defraud creditors. Baird v. Howison, 154 Ala. 359, 45 So. 668. Also when he is guilty of unconscientious conduct connected with the controversy by which he seeks an advantage from his own wrong. Durr Drug Co. v. Acree, 239 Ala. 194, 194 So. 544.

The same principle has been applied to other statutes enacted for the general welfare. The statute of frauds is an illustration. The mere failure or refusal to perform an oral contract required by the statute to be in writing will not deprive a person of equitable relief. But when a person is shown to have induced another to pursue a course of conduct in reliance on the validity of such a promise, when it was intended not to carry out the promise when it was made, but was then intended to work a fraud, such person cannot plead the invalidity of the promise under the statute of frauds. Spencer v. Spencer, 254 Ala. 22 (3 and 4), 47 So.2d 252, and cases cited.

■ And so with reference to the statute which prohibits the wife from becoming surety for the husband. Section 74, Title 34, Code. A married woman may come into equity to vacate a mortgage on her land when it contravenes that statute, and is not deprived of that right on the usual principles of waiver or estoppel. Durr Drug Co. v. Acree, supra.

It is said in Russell v. Peavy, 131 Ala. 563, 32 So. 492, that the "wife can not be estopped to deny her want of power or to set up the invalidity of her deed executed by her for such purpose [to secure the husband's debt], unless there has been on her part some positive acts of fraud, or concealment and suppression which, in law, is equivalent thereto". It is said in Richardson v. Stephens, 122 Ala. 301, 25 So. 39, 41, that "being by the law prohibited to so contract, appellee could not, by attempting to do so, estop herself to deny her want of power". This principle is carefully applied in Durr Drug Co. v. Acree, supra.

It has been held that no theory of estoppel against the wife is permitted to weaken or render ineffective the statute prohibiting the wife from alienating or mortgaging her land or any interest therein without the consent and concurrence of the husband. Section 73, Title 34, Code; Edwards v. Tabb, 242 Ala. 209, 5 So.2d 770; Newman v. Borden, 239 Ala. 387(5), 194 So. 836.

■ Ordinarily a person may waive the benefit of a rule of law or statute enacted for his benefit when it is exclusively a matter of private right, but not when the public policy or morals are involved. City of Birmingham v. Smyer, 235 Ala. 116, 177 So. 630.

In the case of Standard Chemical Co. v. Barbaree, 239 Ala. 601, 195 So. 892, 893, it is said that "as between the parties to a contract, validity cannot be given to it by estoppel if it is prohibited by law or is against public policy". It is said in Vansandt v. Weir, 109 Ala. 104, 19 So. 424, 32 L.R.A. 201; "In the absence of actual fraud committed by her, the statutory real estate of a married woman cannot be divested by a dedication to public use as the result of conduct operating as an equitable estoppel upon her".

Although the option may arise under the deed as the statute provides, it may be lost by a subsequent contract having that effect. Grady v. Williams, 260 Ala. 285, 70 So.2d 267.

■ Without the statute in question (section 15, Title 20) the grantor could not rescind the deed on account of the agreement to support her as the consideration of it except for fraud, actual or imputed, which may be manifested by a complete failure of effort to comply and with no apparent intention to do so. The statute made some important changes. Fraud or its equivalent by the grantee is not now essential to a rescission, nor is a failure to comply with the agreement, and a compliance with the agreement does not defeat the right. McAdory v. Jones, 260 Ala. 547, 71 So.2d 526.

■ Another kindred principle is the invalidity of an agreement made by a mortgagor at the time of executing the mortgage to waive or release his equity of redemption, though it may be done by a subsequent agreement properly supported. Stoutz v. Rouse, 84 Ala. 309, 4 So. 170; Robinson Co. v. Anniston Land Co., 217 Ala. 648, 117 So. 29.

■ We think it is clear that the grantor cannot make a stipulation in a deed which alone would defeat her option granted by the statute. Stoutz v. Rouse, supra. To permit that to be done would defeat the public purpose sought to be accomplished.

■ The question here is not the status between the grantor and grantees, the Claytons. As to them, the deed has been vacated in equity pursuant to the right granted by section 15, Title 20, supra. But as previously stated, the question here involved is as to the effect of that decree upon

 **575**

the mortgage to the appellee bank. The trial court found that the loan was made in reliance on the authority of the Claytons to secure the same by a mortgage on the property and in reliance on the agreement of complainant that said mortgage would be "unrestricted or unimpeachable" by complainant. This is not a finding of positive, actual fraud by complainant necessary to deprive her of her option under the statute as against her grantees. For that to exist she must have had that intent at the time of executing the deed. The mere breach of a contract would not suffice. Constructive fraud is not the test in such a controversy with the grantees. The circumstances are ample to establish the ordinary status of estoppel in pais. But that is not sufficient to protect the grantees: we are not dealing with the grantees. The clause authorizing the mortgage was inserted in the deed with complainant's full and voluntary approval expecting the bank to make a loan to the Claytons as indicated. It amounted to an assurance by the complainant to the bank that in doing so a mortgage on the property by the Claytons would be good notwithstanding the option granted her by the statute. It was not an agreement with the Claytons not to exercise the option so far as they were concerned. The effect of the transaction was by that method to mortgage complainant's property to the bank to secure a loan to the Claytons by it, as if complainant and her husband had executed such a mortgage. Section 73, Title 34, Code, prohibits complainant from doing so unless her husband joins with her in executing such instrument. But when they both executed the deed to the Claytons with the stipulation for such a mortgage by the Claytons, that statute is complied with. By reason of the assertion of the option, the title to the property was reinvested in complainant, but subject to a mortgage on it which she had made through the Claytons as the instrumentality for so doing.

As stated above, complainant could not mortgage her land without her husband's consent manifested by joining with her, and the statute would serve to annul such a mortgage without being influenced by the ordinary principles of estoppel. It would take positive, actual fraud to prevent complainant from asserting the invalidity of such a mortgage, which does not satisfy section 73, Title 34, supra. And while we do not see in this transaction any such positive, actual fraud intended, both husband and wife united in the deed which authorized the mortgage, thus satisfying the statute. By satisfying that statute and the statute of frauds and other requirements, they could authorize a mortgage to be made on the wife's land which would not be affected by the option right granted by the statute (section 15, Title 20). That right as against the grantees was not here affected, but its exercise should not be visited upon the bank which made a loan and took a mortgage in accordance with legal requirements and according to complainant's written authority voluntarily made to effectuate a purpose which she thought was for her benefit and concurred in by her husband in a proper manner.

For the reasons indicated we think the trial court correctly held that the mortgage is valid. The status of the title is that the land is owned by complainant subject to the mortgage to appellee bank. The decree of the trial court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.