205 So.2d 222

MOVING PICTURE MACHINE OPERA-
TORS LOCAL NO. 236 et al.

v.

E. Douglas CAYSON.

6 Div. 109.

Supreme Court of Alabama.

Oct. 5, 1967.

Rehearing Denied Dec. 21, 1967.

470

Victor H. Smith, John W. Carlton and Bishop & Carlton, Birmingham, for appellants.

Robt. S. Vance and Jenkins, Cole, Calla-
way & Vance, Birmingham, for appellee.

472

COLEMAN, Justice.

Respondents appeal from decree ordering and enjoining respondents, an employer and a union, to reinstate complainant, a moving picture machine operator, in his job, and also awarding complainant a decree against respondents for $1,987.50. On application for rehearing, the court rendered decree reducing the money award by the amount of $750.00.

We will refer to respondents as being two parties, one being Moving Picture Machine Operators Local No. 236 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, an unincorporated association, sometimes referred to as the Union or the Local. The other party respondent we will refer

to as Waters, it being composed of Waters Theatre Company, a partnership, and the partners, N. H. Waters, Sr., and W. D. Waters.

On December 20, 1963, complainant filed his bill of complaint, and later amended the bill. The Union filed its demurrer and answer to the bill, and later filed demurrer and answer to the amended bill. The court overruled the Union's demurrer to the amended bill.

The Union filed special pleas A thru F, inclusive. In final decree, the court said Pleas B through F were legally insufficient but the court had considered the same as part of the Union's answer. The court found Plea A "to be without merit."

Waters filed answer to the amended bill. The court heard testimony ore tenus and the cause was submitted on pleadings and testimony.

On February 20, 1964, the court rendered final decree. The decree on application for rehearing was rendered April 27, 1964. The Union appealed from the decree of February 20, 1964, and assigned 76 errors. Waters joined in the appeal and severally adopted all the errors assigned by the Union except two. Complainant has cross-assigned errors.

Complainant is E. Douglas Cayson. In substance, he alleges that from June 1, 1962, until December 5, 1963, he was employed by Waters as a moving picture machine operator (hereafter referred to simply as operator); that until February 17, 1963, he was a member of the Union; that on said date he was purportedly expelled from the Union for refusal to comply with certain seniority practices of the Union deemed by him to be illegal; that Waters owns or operates eight motion picture theaters in Jefferson County, employs one or more op-

erators at each theater, and that, during his employment, complainant worked as one of such operators; that the Union is a local union which consists of members who now, or in the past, have worked as operators; that the Union acted as sole bargaining agent for the operators employed by Waters and was recognized as such agent by Waters; that, on August 1, 1963, Waters and the Union entered into a contract, copy of which is made exhibit to the bill; that on September 5, 1963, the Union, or one of its members, acting under the contract, demanded of Waters that complainant be replaced in his job at Fair Park Drive-In Theatre and that complainant's job be given to W. C. Mathews, a member of the Union who had not then been continuously employed by Waters for as long a time as had complainant; that, pursuant to said demand and acting under the contract and because complainant was below W. C. Mathews on the purported seniority list, which appears as Exhibit A–1 to the contract,[1] Waters did on September 22, 1963, transfer and demote complainant, at a reduction in pay, from his job at Fair Park to Robinwood Theatre, another theater owned by Waters; that on November 20, 1963, the Union, or one of its members, acting under the contract, demanded of Waters that complainant be replaced in the job at Robinwood by another member of the union, H. W. Gaston, who had not then been continuously employed by Waters for as long a time as had complainant;

that on December 5, 1963, Waters, acting under the contract and pursuant to the demand and because complainant was below H. W. Gaston on the list,[2] terminated complainant's employment and replaced him with Gaston; that complainant has not since been employed by Waters and has not been employed; that the persons set out on the list comprise only the membership of the Union, as it existed immediately prior to complainant's aforesaid expulsion from the Union, in the order of their purported length of membership in the Union and without regard to the current employment of any of the persons set out on the list; that the persons whose names appear on the list were, on the date of the contract, employed at divers places of employment; that less than half of said persons were then employed by Waters; that some of said persons have not since been employed by Waters; that said persons were not employed by other employers who simultaneously executed said agreement; that the inclusion and order of such persons on the list were without regard to any status of employment by Waters; that, since the effective date of the contract and under the construction or application of the contract by respondents, membership in the Union or length or order of such membership has been made a condition of employment or continuation of employment of operators by Waters in violation of Code of Alabama of 1940, Title 26, Chapter 7, Article 4;[3] in the alternative, that, since

---

1. The list is set out in appellants' brief as follows:
" '1. R. A. Root Sr.   Leo Nation
   2. W. H. Neal Sr.   17. H. W. Gaston
   3. J. C. Halfacre   18. E. E. Jones
   4. Carl Jones       19. C. T. Gaston
   5. C. L. Gaston     20. H. W. Walker
   6. F. E. Walker     21. Ralph Walker
   7. C. M. Trent      22. M. K. Whitaker
   8. Fred Pinkard     23. W. C. Mathews
   9. H. E. Vick       24. Fred Ware
   10. J. N. Cason     25. Smith Rumble
   11. W. H. Neal Jr.  26. J. B. Colley
   12. T. W. Wall      27. W. H. Beaven
   13. William Mankin  28. E. D. Cayson
   14. W. F. Harper    29. Russell Tyler
   15. R. A. Root Jr.  30. J. C. Harper
   16. William Tate    31. J. L. Borders' "

2. On the list, complainant is 28, W. C. Mathews is 23, and H. W. Gaston is 17.

3. The statute is commonly called the Right to Work Law. See Act No. 430, approved August 28, 1953, Acts of 1953, page 536, which appears in 1958 Recompilation of 1940 Code as §§ 375(1)–375(7), Title 26, and recites in pertinent part as follows:
   "§ 375(1). It is hereby declared to be the public policy of Alabama that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization.
   "§ 375(2). Any agreement or combination between any employer and any

the effective date of the contract and under the construction and application of the contract by respondents, employment and continuation of employment of operators by Waters is effectively controlled by the Union, and that the Union has thereby acquired an employment monopoly with respect to such employment in violation of the Right to Work Law cited above; in the alternative, that, since the contract's effective date, Waters has effectively surrendered control, over continuation of employment of operators by respondent, to the Union and its membership so that the Union has acquired an employment monopoly with respect to such employment in violation of the Right to Work Law; in the alternative, that under the contract, as construed and applied by respondents, continuation or termination of complainant's

employment by Waters was controlled or made dependent upon the amount of time since complainant became a member of the Union, as compared with the length or duration of membership in the Union of H. W. Gaston and W. C. Mathews, and that complainant's right to work for Waters was thereby abridged in violation of the Right to Work Law; and ". . . that his loss or deprivation of employment is as a direct result of the operation of the hereinabove-described contract, that he is without any means of support, and that he will suffer irreparable injuries and damages if equitable relief is not afforded in the premises."

A copy of the contract is attached to the bill as an exhibit. Pertinent provisions are set out in footnote.[4]

> labor union or labor organization whereby persons not members of such union or organization shall be denied the right to work for said employer, or whereby such membership is made a condition of employment or continuation of employment by such employer, or whereby any such union or organization acquires an employment monopoly in any enterprise, is hereby declared to be against public policy and an illegal combination or conspiracy.
>
> "§ 375(3). No person shall be required by an employer to become or remain a member of any labor union or labor organization as a condition of employment or continuation of employment.
>
> ". . . . . . . .
>
> "375(6). Any person who may be denied employment or be deprived of continuation of his employment in violation of sections 375(3), 375(4) or 375(5) or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation or association acting in concert with him by appropriate action in the courts of this state such damages as he may have sustained by reason of such denial or deprivation of employment."
>
> 4. "WHEREAS, the parties hereto have previously agreed that Local No. 236 shall be the sole bargaining agent for operator employees who are or may be employed by the employer; and
>
> ". . . . . . . .
>
> "5. As Union is a member of the International Alliance of Theatrical Stage

> Employees and Moving Picture Machine Operators of the United States and Canada, nothing in this contract shall ever be construed to interfere with any obligation Union owes to such International Alliance by reason of a prior obligation; but this shall in no event be construed so as to conflict with any applicable State or Federal laws.
>
> "6. Employer agrees not to discriminate against or discharge employees because of their union affiliation.
>
> "7. It is mutually agreed and understood that this contract is not designed to conflict with the anti-closed shop law of the State of ALABAMA, and should any clause herein be so construed, it shall not invalidate any other clause herein.
>
> ". . . . . . . .
>
> "10. At the request of the Employer, the Union shall refer available operators for assignment of jobs covered by this agreement. An operator shall continue on such assignment except in cases of extended absence due to illness, accident, agreement by the parties or the exercising of the seniority provisions of this agreement.
>
> "11. In an emergency the Union shall have the privilege to change an operator without prior notice to the Employer; however, the relief operator shall have been given prior approval for emergency assignments. At all other times the Employer is to be consulted and approve all changes in assignment of operators before they are made. All operators referred by the Union to the Employer are to be acceptable by the Employer for the

The gist of respondents' contentions, as we understand them, is to effect that:

work before being sent to any theatre covered under this agreement. A list of operators is to be furnished the Employer for his approval.

" . . . . . . . . .

"EXHIBIT A.
SENIORITY PROVISION
AGREEMENT

"IT IS FURTHER MUTUALLY AGREED:

"THE UNIT FOR THE SENIORITY PROVISIONS OF THIS AGREEMENT SHALL INCLUDE ALL OPERATORS WHO HAVE BEEN REGULARLY EMPLOYED AT THEATRES IN THIS AREA THAT HAVE RECOGNIZED AND/OR NOW RECOGNIZE THE SENIORITY PRACTICES FOR MOVING PICTURE MACHINE OPERATORS, THE EMPLOYER AND THE UNION RECOGNIZE AND AGREE THAT THE SENIORITY OF EACH OPERATOR SHALL CONTINUE (ILLEGIBLE) BE BASED ON HIS CONTINIOUS EXPERIENCE AS AN ASSIGNED OPERATOR AT A PARTICIPATING AREA THEATRE, AND SHALL DATE FROM THE TIME OF THE OPERATORS INITIAL EMPLOYMENT UNLESS THERE IS A BREAK IN SUCH CONTINIOUS SERVICE. IN THIS EVENT AN OPERATOR'S SENIORITY SHALL DATE FROM HIS LAST EMPLOYMENT WITHOUT ANY BREAK IN SERVICE AS RECOGNIZED BY THE PARTIES. SENIORITY FOR OPERATORS EMPLOYED IN THE SENIORITY UNIT, AFTER THE EXECUTION DATE OF THIS AGREEMENT SHALL BEGIN AT THE TIME AND ON THE DATE AN OPERATOR IS NOTIFIED OF HIS REGULAR EMPLOYMENT AS AN OPERATOR IN THE SENIORITY UNIT. AN OPERATOR GIVEN TEMPORARY EMPLOYMENT DOES NOT ACCUMULATE SENIORITY IN THE SENIORITY UNIT UNLESS HE IS NOTIFIED OF HIS REGULAR EMPLOYMENT.

"SENIORITY RIGHTS FOR OPERATORS SHALL PREVAIL, SENIORITY SHALL BE BROKEN ONLY BY COMPLETE VOLUNTARY OR INVOLUNTARY TERMINATION FROM THE SENIORITY UNIT OR ABSENCE FROM EMPLOYMENT FOR NOT LESS THAN TWO YEARS (TWENTY FOUR MONTHS) BY AGREEMENT OF THE PARTIES.

the Right to Work Law is in derogation of the common law and, therefore, must be

"UNDER THIS AGREEMENT A LIST OF OPERATORS ARRANGED IN THE ORDER OF THEIR SENIORITY IS ATTACHED HERETO AS EXHIBIT A–1. COPIES OF THE LIST SHALL BE POSTED IN CONSPICIOUS PLACES AVAILABLE FOR REVIEW BY SENIORITY UNIT OPERATORS, EACH OPERATOR SHALL BE GIVEN UNTIL AUGUST 31, 1963 TO PROTEST HIS LISTED SENIORITY DATE, IN CASE OF APPARENT ERROR, AN OPERATOR'S SENIORITY POSITION ON THE SENIORITY LIST SHALL BE CORRECTED BY AGREEMENT OF THE PARTIES TO THIS AGREEMENT. IF, WITHIN THE TIME LIMIT, NO PROTEST IS MADE THE SENIORITY POSITION OF THE OPERATORS LISTED SHALL BE CONSIDERED AS CORRECT.

"BEGINNING WITH SEPTEMBER 1, 1963 AND EACH CONSECUTIVE FOURTH MONTH THEREAFTER, AN OPERATOR IN THE SENIORITY UNIT MAY DURING THE FIRST TEN DAYS OF THE MONTH EXCERCISE SENIORITY RIGHTS TO BID ON A PREFERRED JOB WITHIN THE SENIORITY UNIT AND BE ASSIGNED SUCH JOB IF ACCEPTABLE BY THE COMPANY ACCORDING TO FAIR AND JUST REASONS. "AN OPERATOR IN THE SENIORITY UNIT WITH A HIGHER SENIORITY RATING WHO HAS BEEN DISPLACED BY REASON OF THEATRE CLOSINGS, REDUCTION IN MANPOWER, OR THE EXCERCISING OF THE SENIORITY RIGHTS MAY, AT SUCH TIME, BID ON AND BE ASSIGNED TO REPLACE AN OPERATOR WITH LESS SENIORITY PROVIDED SUCH OPERATOR EXCERCISING SENIORITY IS ACCEPTABLE TO THE COMPANY ACCORDING TO FAIR AND JUST REASONS, OPERATORS ASSIGNED TO JOBS WITHIN THE COMPANY MAY DISPLACE ANOTHER OPERATOR WITHIN THE COMPANY ACCORDING TO HIS SENIORITY IN THE *UNION* WITHOUT SPECIAL PERMISSION FROM THE COMPANY. (Respondents contend that the word *"UNION,"* emphasized above, is a typographical error and should be "UNIT." Even if respondents are correct, we reach the same result.) "AT ANY TIME WHEN A REGULAR JOB BECOMES AVAILABLE, THE

**476**

strictly construed; that the contract does not violate the Right to Work Law on the face of the contract or as the contract was construed and applied by respondents; that complainant's right to employment or continuation of employment was not denied or abridged by any requirement that he be a member of the Union; that the seniority list is not based on length of union membership but on length of employment in the "unit," or geographical area, which embraced "the entire greater Birmingham area including all the theatres in the Birmingham area," being sixteen theatres in all, of which Waters owned eight; that complainant has waived the right or was estopped to assert the invalidity of the contract; and that the bill was subject to demurrer on the ground that the allegations of the bill are insufficient to show that complainant will suffer irreparable damages.

1.

The principal issue of fact is whether the order of the names on the seniority list was based on longevity of union membership or on longevity of employment in the area. The court found:

"The list purports to contain the names of all moving picture machine operators who have been regularly employed at theaters in this area and listed according to the amount of each person's continuous experience as such within the area. The Court finds that such is not a fact. The Court finds, rather, that the list is nothing more than a roster of the membership of the respondent union as it existed immediately prior to the expulsion of the complainant in the order of the listed persons' initiation into the respondent union.

HIGHEST SENIORITY OPERATOR BIDDING ON THE JOB IF ACCEPTABLE BY THE COMPANY ACCORDING TO FAIR AND JUST REASONS, SHALL BE ASSIGNED TO THE JOB. "SENIORITY SHALL PREVAIL IN ALL CASES OF LAY-OFF AND RECALL OF OPERATORS IN THE SENIORITY UNIT, OPERATORS WITH THE LEAST SENIORITY SHALL BE

. . . . There are only eight moving picture machine operators' jobs available in the theaters operated by respondent Waters Theatre Company and only twenty of such regular jobs available in the entire Birmingham area.

"In practical effect, the purported seniority list insures that the only persons who will be regularly employed by the respondent Waters Theatre Company or, indeed, by any other employer within the Birmingham area, which recognizes this 'seniority' system, are those persons who appear at the top of the purported seniority list solely by reason of the date of their initiation into the respondent local union."

The transcript of testimony and exhibits covers 225 pages. A dozen or more witnesses testified. Appellants' summary of the evidence covers 21 pages of brief and appellee's statement of facts covers 32 pages of brief. We will not undertake to restate testimony favorable to appellants but will refer to testimony which will sustain the court's finding.

W. H. Neal, Jr., secretary of the local since 1959, testified that he had been operating in the Birmingham area since 1935, had been initiated into Union in 1935, and was the son of a Union member. He testified that he participated in the trial of complainant when he was expelled from the Union; that complainant was expelled because "he violated the oath that he took of the union"; that complainant signed an oath to uphold rules, regulations, and laws but he did not uphold them and said he would not do it in the future and did not;

LAYED OFF FIRST IN A DECREASE OF OPERATORS, AND THE OPERATORS WITH THE HIGHEST SENIORITY RE-CALLED WHEN THERE IS AN INCREASE OF OPERATORS IN THE SENIORITY UNIT. AN OPERATOR MAY BE DISQUALIFIED FOR JUST CAUSE UNDER THIS PROVISION OF THE AGREEMENT."

that the rule complainant would not uphold was the "seniority provision" which "is not found in the constitution, by-laws anywhere." The witness testified that he wrote the seniority law himself,[5] that it was distributed to the members. The witness testified in substance that the seniority list was based on card numbers, with the smallest number at the top and the largest number at the bottom.[6]

5. "COMPLAINANT'S EXHIBIT 5
"Seniority Law. Ratified Aug. 28, 1950:
" 'Excluding all senior members, who will retain their seniority over all other members. All members who are not senior members shall be rated in seniority by cards numbered by the Local as to their date of initiation into Local 236. This shall be their permanent seniority number.'

" 'In cases where one or more members were initiated on the same date, these members shall decide among themselves as to their seniority. If at the end of thirty days no decision has been reached, it shall be brought before the next regular meeting and their seniority shall be decided upon by all members present.'

" 'All men involved in card seniority that are on regular jobs are intitled to remain on same as in relation with other non-senior members. Upon leaving above job, these and all other jobs will be covered by care seniority.'

" 'Any new or transfer members will follow in seniority the older members in the order of their initiation into Local 236.'
"Amendment to Resolution:
" 'That members with numbered cards leaving a regular job through any fault of his own shall lose his seniority privileges for a period of 120 days.'
" 'That in the future there will be no more multiple initiations into this Local, and men will be initiated separately.' "

6. W. H. Neal, Jr. testified:
"Q Let me show you this what purports to be a seniority law and ask you if that is what we are talking about?
"A That is the one. I wrote it myself.
"Q This was distributed to the members, was it not?
"A Correct.
"Q All right, sir. We offer this in evidence as the next numbered exhibit.
"MR. SMITH: I don't think it is competent. We are not trying that expulsion case here.
" . . . . . . . . . .
"THE COURT: Well, we are travelling under the equity rule. If there is any legality, or materiality of the ex-

hibit, it can be appraised—have this marked.

"(Whereupon, said seniority law was received in evidence under the equity rule, and marked Complainant's Exhibit 5, and is set out in words and figures following the transcript of testimony.)
" . . . . . . . . .
"MR. VANCE: Let me ask you this, Mr. Neal. Do you have senior members, and junior members?
"A No.
"Q You did away with the senior and junior members?
"A Correct.
"Q You have a seniority list in the union?
"A That is correct.
"Q How long has that seniority list existed in its present order?
"A In its present order, well, we have had deaths, and so forth. There is no way for me to sit here and tell you exactly.
"Q All right, sir. I will ask you this; have there been any changes in the order, aside from deletions within the last three or four years?
"A No.
"Q The order that was included in this seniority list, as it applied to this contract was appended to this contract, was the same seniority list that you had used the day before the contract, within the union, is that right?
"A Actually, I can't tell you. It was based on employment and jurisdiction.
"Q Were you on the committee that drew it up, sir?
"A The list?
"Q Yes, sir.
"A Partially, yes, because I did most of the typing.
"Q All right, sir. Now, can you tell us about any variations between that list and the seniority that existed the day before the contract was entered into, do you know of any variations?
"A No.
"Q All right, sir. Now, I want to ask you about the order in which these people are included on this list. Now, I know what the contract says. What I want to know is how it is made up, and what puzzles me is this. I would like to ask you about all members, not just sen-

W. H. Neal, Jr., testified that J. C. Harper is next to last man on list but he was not the next to last listed man to come into this area to be given work initially; that the witness is No. 11 and C. T. Gaston is No. 19, but Gaston was working here, "off and on," when the witness started to work.

Earl E. Jones, former business agent of the Union, testified that, at the time he came to the area and started working, C. T. Gaston, Cary Mathews, H. W. Walker, Fred Ware, and others were already working.[7]

■ There is ample evidence to support the court's finding that the list is a roster of Union membership as it existed immediately prior to expulsion of complainant and that the list, in practical effect, insures that the only persons who will be regularly employed by Waters, or any other employer in the area, are those persons whose names appear at the top of the list solely by reason of the date of their initiation into the Union. There is evidence which supports a finding that operators were assigned to jobs in accordance with their position on the list and that the operators who were higher on the list "rolled" those lower on the list when jobs ceased to exist. The court saw and heard the witnesses and is the judge of their credibility. We would not be justified in holding that the findings of the trial court are plainly and palpably wrong.

There is ample evidence to support a finding that complainant was "rolled" from his jobs at Fair Park and Robinwood, and denied continuation of employment by Waters, because he was junior on the seniority list to the men who "rolled" him.

ior members. Was it by card numbers that they came into the local, as to their date of initiation into Local 236, what is the number card?

"A The number on a card determined it, by the time they came in, and went to work for this—in this jurisdiction, including Mr. Waters. This is when they were taken in according to that, so there would be no mistake.

"Q Each man as he comes into the union, he gets a card with a number on it, issued by this local?

"A True.

"Q If I was to get initiated today, I would get the number that is next below the last man ahead of me, that was initiated, is that right?

"A Right.

"Q And your seniority list was based on the numbers on that card, that is the lowest number at the top, down to the highest number at the bottom, is that right?

"A So far as it goes."

7. Earl E. Jones testified:

"Q And at the time you came here, and started working, Mr. C. T. Gaston who is right below you on the list was working here as an out of town member, is that right?

"A That is correct.

"Q All right, sir. I believe Mr. Cary Mathews down there, number twenty three had been working since before that time, is that correct?

"A I am positive that he had, although at the time I did not know him, but I knew that he was working.

"Q Do you know any other people in the group from 19 down to 31 who were working, or had worked in this area prior to the time that you started in 1946?

"A I believe H. W. Walker was working, Mathews, I believe, Fred Ware, I am positive Smith, Rumble, J. B. Colley was before my time. W. H. Beaven wasn't, E. D. Cayson wasn't, Russell Tyler, I believe had worked as an extra man without a card before I ever worked here.

"Q How about J. C. Harper?

"A Well, J. C. Harper was a former member of this local, and had he not been expelled, he would have been right under John Cason.

"Q That is number ten?

"A Yes.

"Q You say he was expelled, J. C. Harper?

"A. Yes.

"Q And later must have gotten back in because we heard about him being expelled again?

"A He was re-instated.

"Q And do I understand you correctly at the time he was re-instated, they dropped him on the seniority list down according to his initiation date, is that right, for the second initiation?

"A That is correct, under what we are supposed to go by."

On the principal issue of fact, we are of opinion that respondents' contentions are not sustained by the record.

### 2.

Beginning on page 55 of brief, respondents argue that neither the contract, nor the application thereof, in any way violated the Right to Work Law, and therefore, complainant is not entitled to the money judgment or the injunctive relief decreed by the court.

Respondents cite fifty-one cases in brief and present various arguments to show error. We have read all the cases cited by respondents as well as the thirty-six cases cited by complainant, and also some other authorities. We will not undertake to answer seriatim the fourteen arguments in respondents' brief but will reply to those which we think should be answered.

We do not think that we are compelled to find that the contract, on its face, violates the Right to Work Law, but we do hold that, as construed and applied by respondents with respect to complainant's right to continuation of employment by Waters, the contract does violate the Right to Work Law and that complainant did sustain damages as the result of violation of § 375(3) of Title 26, which provides:

"No person shall be required by an employer to become or remain a member of any labor union . . . . as a condition of . . . . continuation of employment."

In order to hold that this contract, as interpreted and applied by respondents, is not a violation of § 375(3), we would have to hold that a contract, which requires seniority based on longevity of union membership as a condition of continuation of employment, does not require an employee to become a member of the union. We are of opinion that a contract, which makes longevity of union membership such a condition, makes union membership itself a condition of continuation of employment. In order to have longevity of union mem-

bership, the employee must first have union membership. Unless he has union membership, he cannot have any longevity of membership.

In the instant case, complainant was "rolled" and his employment finally terminated because he did not have as much longevity of union membership as the man who was given complainant's job. Respondents denied continuation of employment to complainant because he did not have sufficient longevity of union membership.

■ We hold that complainant was denied continuation of employment because longevity of union membership was made a condition of continuation of his employment. It necessarily follows, as we see it, that he was entitled to a money judgment for the damage he suffered because he was denied continuation of employment in violation of § 375(3).

Of all the cases cited in briefs, only one appears to deal with seniority based on longevity of union membership. That case arose under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and not under a Right to Work Law. The National Labor Relations Board found a union guilty of violating the statute:

". . . . (1) in having caused the *employer to discriminate against five of* its employees, in violation of section 8(a) (3) of the Act, by assigning them work on the basis of seniority determined by the date of their membership in the union instead of the date of their employment, and (2) in having maintained, renewed and enforced a contract with the employer, giving the union the right to settle all controversies over employees' seniority, and so improperly causing, in the Board's judgment, the employees to be induced to join the union.

"The contract between the union and the employer contained a general provision that 'Seniority rights for employees shall prevail', and a requirement that a list of the employees, arranged in the

order of their seniority, should be kept posted on the employer's premises. There was, however, a special clause in the agreement, under which, as noted above, the union was to have the authority to settle all controversies or questions of seniority. The union accordingly prepared the seniority lists for posting by the employer and made the seniority of each employee turn upon the date that he had become a member of the union. The five employees here involved, who had not immediately joined the union when their employment began, were thus given seniority ranks below those of others who had been employed later but had promptly taken out union membership. The rankings so set out in the posted list did not, however, cause the five employees to be pecuniarily affected, until some time later, when the subsequent employees referred to were allowed to claim work priorities over them as a matter of seniority rights." National Labor Relations Board v. International Brotherhood, 8 Cir., 225 F.2d 343, 345.

The court said:

" . . .. On the circumstances involved, the seniority list was an illegal one under the Act and so was properly subject to being refused application by the employer in any affecting work-situation that might arise. . . . . " 225 F.2d at page 346.

■ The cited case is not directly in point, but the holding does appear to us to support our holding that to require longevity of union membership as a condition of continuation of employment is to require union membership as such a condition.

**3.**

■ Respondents contend that complainant is barred from asserting the illegality of the contract because he acquiesced in, was governed by, and took advantage of the seniority practices of the union and did not object to his position on the list when he was given opportunity to object.

§ 375(1), Title 26, recites:

"It is hereby declared to be the public policy of Alabama that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization."

We have said that the instant contract as applied by respondents violated the statute. It must follow that the contract as so applied violated the public policy of this state as declared by the Legislature.

■ Ordinarily a person may waive the benefit of a rule of law or statute enacted for his benefit when it is exclusively a matter of private right, but not when the public policy or morals are involved. Webb v. Bank of Brewton, 265 Ala. 568, 574, 93 So. 2d 154.

■ It is generally considered that, as between the parties to a contract, validity cannot be given to it by estoppel if it is prohibited by law or is against public policy. Standard Chemical Co. v. Barbaree, 239 Ala. 601, 602, 195 So. 892.

Because the instant contract as applied by respondents violated public policy, complainant could not give the contract validity by waiver or estoppel and is not now barred from asserting its invalidity.

**4.**

Respondent Union asserts that the court erred in overruling Union's demurrer to the bill of complaint because it "is not a sufficient pleading upon which to base injunctive relief because there are insufficient allegations that the complainant will suffer irreparable damages so as to warrant the issuance of an injunction. But it is necessary to allege such facts."

In the amended bill complainant avers:

" 'Complainant avers that his loss or deprivation of employment is as a direct

result of the operation of the hereinabove-described contract, that he is without any means of support, and that he will suffer irreparable injuries and damages if equitable relief is not afforded in the premises.' "

The relief sought is not to enjoin a breach of contract of employment. Complainant seeks, in substance, to enjoin respondents from depriving complainant of employment or continuation of employment, or of interfering with his right to employment, by application of the contract in an unlawful manner which violates the public policy of this state.

■ Waters did not file a demurrer to the bill of complaint. The demurrer was filed by the Union, and, if the court erred in overruling the demurrer, it is an error of which the Union only, and not Waters, can complain. A respondent, who did not demur to the bill of complaint, cannot complain of the overruling of a demurrer interposed alone by another respondent in its own behalf. Shiff & Son v. Andress, 147 Ala. 690, 40 So. 824, 825; Larkin v. Haralson, 189 Ala. 147, 66 So. 459; Watt v. Combs, 244 Ala. 31, 37, 12 So.2d 189, 145 A.L.R. 667.

Complainant alleges that he has been deprived of his employment "as a direct result of the operation of the hereinabove-described contract," and that "he is without any means of support." These are allegations of fact on which issue can be taken and evidence introduced to determine the truth of these allegations.

■ One's employment, trade, or calling is a property right and the wrongful interference therewith is an actionable wrong. Bowen v. Morris, 219 Ala. 689, 691, 123 So. 222.

In the last cited case, in reversing a decree dissolving a temporary injunction which restrained respondents from causing

to issue any writ of garnishment against complainant's employer to collect an allegedly spurious claim, and from "turning in" to the employer an assignment of wages which complainant had executed, this court considered the adequacy of the remedy at law to give relief to complainant if he should be discharged by his employer. Complainant had alleged in the bill that he would be discharged if garnishment issued and the assignment of wages was "turned in." With respect to adequacy of the remedy at law, this court said:

" . . . . we are at the conclusion the remedy at law for the wrongful acts here complained of is not full, complete, and adequate.

"Necessarily, the actual damages resulting from a discharge of this complainant by his employer, severing his long relations, and putting him to the task of finding a new job, may be one for which he is untrained, is quite indefinite. This is rendered more uncertain because of no fixed tenure of employment. Moreover, we have held that wounded feelings, the humiliation, and anxiety to result from such wrongful act of respondent is proper matter of damages. But such damages are not subject to any pecuniary standard of measurement. This fact is one recognized as a basis for injunctive relief. 32 C.J. 136, § 181.

"Awaiting the uncertainties as to quantum of damages, the delay in recovery which within itself, in a case like this, may increase them, are matters going to the adequacy of legal remedies." (219 Ala. at page 691, 123 So. at page 223)

In 1915, in Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, complainant sought to enjoin enforcement of a legislative act alleged to be unconstitutional. Complainant alleged that enforcement of the act would cause his discharge from employment. In affirming the decree granting an interlocutory injunction against enforcement of the

act, the Supreme Court of the United States said:

" . . . . The right to earn a livelihood and to continue in employment unmolested by efforts to enforce void enactments should similarly be entitled to protection in the absence of adequate remedy at law. It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. . . . . It sufficiently appears that the discharge of the complainant will be solely for the purpose of meeting of the requirements of the act and avoiding threatened prosecution under its provisions. It is, therefore, idle to call the injury indirect or remote. It is also entirely clear that unless the enforcement of the act is restrained the complainant will have no adequate remedy, and hence we think that the case falls within the class in which, if the unconstitutionality of the act is shown, equitable relief may be had." (239 U.S. at pages 38 and 39, 36 S.Ct. at page 9)

With respect to the granting of injunctions, the Illinois Appellate Court for the Second District said:

"Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of equity rests: People v. McWeeney 1913 259 Ill. 161, 102 N.E. 233; and there are a number of legal rights in which there is a property interest but which, because of their personal and peculiar character, could not be transferred, but as to which equity will interfere to protect against deprivation of employment: . . . . The right to earn a livelihood and to continue in employment unmolested by any illegal or unjustified molestation or interference of third persons is similarly entitled to equity's protection in the absence of an adequate remedy at law, even though the employment be at the will of the employer and/or employee and not for any definite term,—it is nevertheless not at the will of third persons: Truax v. Raich 1915 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131." O'Brien v. Matual, 14 Ill.App.2d 173, 192, 193, 144 N.E.2d 446, 455.

In the instant case, complainant had a right to earn a livelihood, unmolested by the Union's application of the contract in violation of the public policy of this state as declared by the legislature. Under the authority of Bowen v. Morris, supra, the remedy at law was not adequate.

We are of opinion that the averments that complainant has been deprived of employment, that he is not employed, and "that he is without any means of support," are sufficient averments of facts to show that he will suffer irreparable injuries unless afforded equitable relief.

The court did not err in overruling that ground of demurrer which the Union relies on to assert that insufficient facts are alleged to show that complainant will suffer irreparable damages.

### 5.

Respondents' 75th assignment is that the court "erred in *considering* the requirement of (Section 16 of) the constitution of the International Union . . . . that all operators' jobs be filled by its own members." (Emphasis Supplied and Parenthesis Added)

Although under strict application of the rules governing assignment of errors this may not be a good assignment, we consider it in connection with Assignment 42 which appears to be a proper assignment.

When Section 16 was offered by complainant, the witness J. B. Colley, business

agent of the Local, had already testified as follows:

"Q You have to write the contract to conform to the International requirements?

"A That is right.

"Q And is it your statement that this contract conforms to the International requirements?

"A That is right, it has been approved by the International."

After the Local had objected and Section 16 had been admitted, the witness testified further:

"MR. VANCE: Now, Mr. Colley, if the provisions that says locals are required to insist that all positions within their jurisdiction be filled by their own members; you have undertaken to do that in the past except where you ran short of members, have you not?

"A That is right.

"Q All right, sir. And still do except where you don't have enough members to go around?

"A That is right."

As we understand the record, Colley testified that the Local did exactly what Section 16 required. Section 16 throws light on the action of the Local, acting by and through the business agent, in assigning operators to job openings. In the light of the testimony of the business agent, we think Section 16 was relevant and admissible, and properly considered by the court in deciding how the contract with Waters had been construed and applied by the Local.

In Assignment 42, respondents complain that the court erred in incorporating in final decree the following finding:

" . . . . The constitution of the international union, with which the respondent local is affiliated, requires that each member local insist that all operators' jobs be filled by its own members. According to the testimony of the union's business agent, which in this respect the Court accepts as fact, the agreement in question, as applied by the parties, conforms to the requirements of that constitution . . . . "

■■■ Colley testified that the contract conformed to the International requirements and had been approved by the International. When asked if "you have undertaken to do that in the past" and "still do," he answered in the affirmative. We think the testimony supports the finding. It was for the trial court to determine the credibility of witnesses and weigh the evidence.

*Cross Assignments.*

On February 20, 1964, the court rendered final decree wherein the court decreed that complainant recover of respondents $1,987.-50.

On March 2, 1964, Waters filed application for rehearing which was presented to the trial judge and by him set for argument on March 25, 1964.

On March 19, 1964, the Union filed its application for rehearing and presented it to a different judge of the same circuit who set the application for hearing before the trial judge on March 26, 1964.

On March 25, 1964, the trial judge continued both applications to April 3, 1964. We find in the record no subsequent order of continuance.

On April 27, 1964, the trial court rendered decree modifying the decree of February 20, 1964, by "eliminating the allowance to the complainant of the attorneys' fee of Seven Hundred and Fifty (750) Dollars," and overruling the applications for rehearing in all other respects. The result of the modification would be to reduce the money awarded to complainant by the amount of $750.00.

Complainant cross assigns for error that the court erred in entering its decree on application for rehearing.

§ 119, Title 13, Code 1940, provides that after the lapse of thirty days from the date on which a judgment or decree was rendered, the court shall lose all power over it, as completely as if the end of the term had been on that day, unless a motion to set aside the judgment or decree, or grant a new trial, has been filed and called to the attention of the court and an order entered continuing the motion for hearing to a future day. Equity Rule 62 provides that a party must file application for rehearing with the register and present same to the judge who rendered the decree within thirty days from the date of said decree.

By its terms, § 119, Title 13, applies to decrees in equity as well as to judgments at law. This court has said that: "A motion for the rehearing of a modified final decree may be made under section 119, Title 13, Code within thirty days after such decree is rendered . . . ." Evett v. Mitchell, 251 Ala. 22, 26, 36 So.2d 98. In so far as the requirements for timely filing, presentation to the judge, and orders of continuance are concerned, we hold that § 119, Title 13, applies equally to judgments at law and decrees in equity.

So far as the instant record discloses, by order made on March 25, 1964, the applications for rehearing were regularly continued to April 3, 1964, but no order was made on or prior to that date continuing the applications to any later date or showing that the applications were heard, or submitted, and taken under advisement by the court on April 3, 1964. The next entry with respect to the applications is the decree of modification made on April 27, 1964.

When a motion for a new trial or rehearing is now continued to a future date beyond the time limit fixed by § 119, Title 13, there is no further limitation or impediment arising from a term of court. The motion or application, when submitted on the date to which it is continued as authorized in § 119, is in the breast of the court and no further continuance is necessary to suspend the finality of the original judgment or decree. But the record must contain some showing or statement of submission. Greer v. Heyer, 216 Ala. 229, 113 So. 14; Shelley v. Clark, 267 Ala. 621, 103 So.2d 743; Holman v. Baker, 277 Ala. 310, 318, 169 So.2d 429, on rehearing, paragraph [10, 11].

The instant record contains no showing or statement of submission, or order of continuance, made prior to or on April 3, 1964, which is the latest date to which the hearing on the applications was regularly continued. Because of the absence of such a proper showing or order of continuance, the applications were discontinued after April 3, 1964. We have found nothing in the record which shows that complainant thereafter waived the discontinuance. Greer v. Heyer, supra.

Because the applications had been discontinued, the court erred in rendering the decree of modification on April 27, 1964, and that decree is reversed and held for naught, and the decree of February 20, 1964, stands as the final decree in the cause.

In answer to this cross assignment, appellants state in brief that on April 3, 1964, the trial judge advised that it was not his custom to hear oral argument on application for rehearing and that all parties, through their counsel, consented that argument be presented in writing; that Waters presented argument in memorandum on that day; that the Union presented argument by memorandum on April 6, 1964; that appellee presented argument by memorandum dated April 9, 1964; and that, by memorandum dated April 11, 1964, Waters presented argument in reply. Appellants say that it is their position that the applications for rehearing were submitted April 3, 1964.

█ It has long been the rule that the appellate court will not consider matters "found in the brief, but not in the record, where, to avail, it must be." Central of Georgia R. Co. v. Ashley, 159 Ala. 145, 158, 48 So. 981, 985. "We cannot consider a matter which does not appear in the record on appeal." Cash v. Usrey, 278 Ala. 313, 315, 178 So.2d 91, 93. See cases cited in Ala. Digest, Appeal and Error, ☞714(5).

Appellants say that " . . . . this Court has recognized that successive continuances are unnecessary to preserve the jurisdiction of the court where the motion has been heard, and taken under consideration. Cooper v. Owen, 230 Ala. 316, 161 So. 98; Ex parte Drivers, Inc., Horne v. Drivers, Inc., 138 So. 427, 24 Ala.App. 557.

In *Cooper,* this court said: "Since this record shows that the motion was submitted and taken under consideration at a time when the court had the right to do so, and was not carried beyond that term before action was taken by it, the court had the power to act on the motion when it was overruled. . . . ." (230 Ala. at page 318, 161 So. at page 99)

In *Drivers,* the plaintiff applied for mandamus to require the trial judge to vacate an order granting a new trial. The answer of the judge stated that the motion had been submitted and taken under advisement by agreement of counsel for both parties on the day to which the motion had been regularly continued. The Court of Appeals sustained the action of the trial judge in granting the new trial and denied the writ. Without deciding whether the decision in *Drivers* is correct, we distinguish it from the instant case in that the Court of Appeals, in *Drivers,* had before it the trial judge's answer stating that the motion had been submitted on a day when the court had the power to take the motion under submission. The cases cited do not support the argument as appellants seek to apply it to the instant case where the record does not show that the applications were submitted at a time when the court

had a right to have the applications submitted.

We are of opinion that, according to the instant record, the court erred in rendering the decree of modification on April 27, 1964, because the applications for rehearing had been discontinued.

Other cross assignments have been considered. We are not persuaded that further error is shown which requires reversal or which would justify further extension of this lengthy opinion.

The decree of April 27, 1964, on rehearing is reversed, and the cause is remanded with directions that decree be rendered dismissing the applications.

The decree of February 20, 1964, is affirmed.

Affirmed in part.

Reversed and remanded in part with directions.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

## ON REHEARING

Appellants contend that Equity Rule 62 governs procedure on applications for rehearing in equity; that Rule 62 differs from and is in conflict with § 119, Title 13, with respect to the necessity for successive orders of continuance of an application for rehearing; that Rule 62 must prevail over § 119 under the reasoning in Faust v. Paramore, 272 Ala. 19, 127 So.2d 832; and, therefore, that we are in error in holding on original deliverance that the applications for rehearing had been discontinued and that the trial court erred in rendering the decree on rehearing which modified the original final decree.

Appellants appear to recognize that under § 119, in cases at law, motions to set aside the judgment or grant a new trial will become discontinued unless successive orders of continuance are regularly made.

Appellants say this is not the correct interpretation of Equity Rule 62 in connection with Rule 65.

In § 119, it is required that the motion be filed, called to the attention of the court, and an order entered continuing the motion for hearing to a future day.

Rule 62 requires that a party desiring a rehearing must file application, present same to the judge, that the judge may grant or overrule the application, or modify the decree, or set the same down for hearing, and, "In any event, the judge must enter an order or decree setting forth his ruling."

The trial judge in the instant case made an order setting the applications down for hearing.

We can find no conflict between rule and statute with respect to successive orders of continuance of the application. If appellants be correct in saying that successive orders of continuance are not necessary, then, in equity, a judge could set down an application for rehearing for a specific day, or for no day at all, and, without more, at some unspecified future day, months or years later, render a decree on rehearing modifying the former final decree.

Equity Rule 62 modifies in some respects its predecessor, old Rule 81. The late Judge Creel, who is recognized as an able authority on equity procedure, wrote concerning Rule 62 as follows:

". . . . This rule changes and clarifies to a large degree the procedure on such application and is a decided improvement over our old uncertain practice." (1 Alabama Lawyer at page 33)

■ To follow the construction contended for by appellants would restore uncertainty and indefiniteness to Rule 62 with respect to procedure on applications for rehearing. We have found no authority which controls the construction of Rule 62 on the point here under consideration. We are of opinion that the correct construction requires successive orders of continuance and that we should adhere to our original holding.

Opinion extended.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.